**Salem**
WILLIE H. JOHNSON
v.
CITY OF CLIFTON FORGE
No. 0839-87-3
Decided January 3, 1989

COUNSEL

Ellen M. Arthur (The Legal Aid Society of Roanoke Valley, on brief), for appellant.

Brian R. Jones (Elizabeth A. Schell, Woods, Rogers & Hazelgrove, on brief), for appellees.

OPINION

**KOONTZ, C.J.**—In this workers' compensation case, we are presented with the following issues: (1) whether under Rule 5A:11 the failure of appellant to timely mail or deliver to counsel for appellees a copy of the notice for appeal required to be filed with the clerk of the Industrial Commission constitutes a jurisdictional

defect that requires dismissal of the appeal, and (2) whether the evidence was sufficient to prove that appellant unjustifiably refused employment procured for him suitable to his capacity under Code § 65.1-63.

I.

On May 29, 1987, the Industrial Commission issued its decision which denied certain benefits to appellant, Willie H. Johnson. On June 29, 1987, counsel for Johnson filed a notice of appeal with the clerk of the Industrial Commission and certified that a copy was mailed to the clerk of the Court of Appeals. The notice contained the names of the appellees, City of Clifton Forge and The Travelers Insurance Company, and the names, addresses and telephone numbers of their counsel. A copy of this notice of appeal was not mailed or delivered to counsel for appellees at that time. Counsel for appellees subsequently received a copy of the notice of appeal on July 24, 1987, which was mailed on or about July 21, 1987. Because of these procedural facts, appellees filed a motion to dismiss this appeal, asserting that the failure of counsel for Johnson to mail or deliver a copy of the notice of appeal to opposing counsel within thirty days of the entry of the order by the commission is fatal to the perfection of this appeal and requires dismissal. We disagree.

Rule 5A:11(b) provides:

*Notice of Appeal.* - No appeal from an order of the Commission shall be allowed unless, within 30 days after entry of the order appealed from, or within 30 days after receipt of notice by registered mail of the order appealed from, counsel *files with the clerk* of the Industrial Commission a notice of appeal which shall state the names and addresses of all appellants and appellees, the names, addresses, and telephone numbers of counsel for each party, and the address and telephone number of any party not represented by counsel, and whether the appellant challenges the sufficiency of the evidence to support the findings of the Commission. A copy of the notice of appeal shall be filed in the office of the Clerk of the Court of Appeals, and must be accompanied by a check or money order in the amount of $25 payable to the clerk of the Court of Appeals.

(emphasis added).

Rule 5A:1(10) defines the terms "filed with the clerk" or "files with the clerk" to mean "deliver to the clerk specified a paper, a copy of which has been mailed or delivered to opposing counsel . . . ."

■ Relying primarily on these two rules, appellees assert that "compliance with the rules is at the very heart of the orderly administration of justice" and "if the rules were allowed to be ignored, the judicial system would fall into a state of chaos and there would be no finality to litigation." In general terms we agree with these assertions. However, it is just as true that a review of the merits of cases on appeal is the rightful concern of society in general and the appellate courts in particular. Thus, in the context of preserving a review of the merits of cases on appeal, a distinction must be drawn between rules which are mandatory and those which are directory. Only where the rule is mandatory does a failure to comply with it create a jurisdictional defect that will result in a dismissal of the appeal. *See, e.g., Andrews v. Cahoon,* 196 Va. 790, 86 S.E.2d 173 (1955); *Avery v. County School Board of Brunswick County,* 192 Va. 329, 64 S.E.2d 767 (1951); *Harris v. Harris,* 166 Va. 351, 186 S.E. 29 (1936); *Johnson v. Commonwealth,* 1 Va. App. 510, 339 S.E.2d 919 (1986).

To determine whether the particular provisions of Rule 5A:11(b) and Rule 5A:1(10), relied upon by appellees in their motion to dismiss this appeal, are mandatory or directory we must examine the rules in the context of the statutory scheme of the appellate jurisdiction of this court over appeals from the Industrial Commission and the overall scheme of the rules applicable to this Court. Code § 17-116.05, which defines the civil jurisdiction of this Court, provides for an appeal of right from any final decision of the commission. In contrast, criminal appeals pursuant to Code § 17-116.05:1 are by petition for appeal.

Code § 65.1-98 provides, in pertinent part:

Appeals shall lie from such awards [workers' compensation] to the Court of Appeals in the manner provided in the Rules of the Supreme Court. [Rule 5A:11].

The notice of appeal shall be *filed with the clerk* of the Industrial Commission within thirty days from the date of such award or within thirty days after receipt of notice to be sent by registered or certified mail of such award. A copy of the notice of appeal shall be filed in the office of the clerk of the Court of Appeals.

(emphasis added).

The term "filed" is defined by statute in the Workers' Compensation Act. Pursuant to Code § 65.1-2.1:

"Filed" as used in this Act shall mean hand-delivered to the Commission's office Richmond; sent by the telegraph; or posted at any post office of the United States Postal Service by certified or registered mail. Filing by first-class mail shall be deemed completed only when the application actually reaches the Commission's offices in Richmond.

Code § 65.1-2.1, unlike Rule 5A:1(10), defining the term "filed," does not require that a copy of the notice of appeal be mailed or delivered to opposing counsel. We believe, however, that the settled principle that a statute prevails over a rule is too simplistic an answer to appellee's assertions in this case. Rather, we believe the scheme of the rules concerning appeals from the commission is consistent with the statutes when the requirement of the rules for mailing or delivering a copy of the notice of appeal is considered directory and not mandatory.

We briefly review the scheme of the applicable rules. Rule 5A:11 is a "Special Rule Applicable to Appeals From the Industrial Commission." Part (b) essentially provides that the notice of appeal must reach the clerk of the commission within thirty days from the date of the commission's order or from the date such order is received by the appealing party. Rule 5A:3 specifically makes this thirty day time period mandatory. Once the notice of appeal has reached the clerk of the commission within the mandatory thirty day period, the remaining provisions of Rule 5A:11 provide that this clerk shall transmit the record to the clerk of the Court of Appeals, who shall in turn promptly notify all counsel of the date on which the record is filed in that office. The date on which the record is filed triggers the provisions of Rule

5A:19(b) which specifically address appeals as a matter of right and which provide for the times within which the briefs of the parties must be filed. Rule 5A:25 requires an appendix in all cases. This rule further provides that where the parties cannot agree on the contents of the appendix, the appellant is required to designate the contents to be included in the appendix within fifteen days after the record is filed. Thereafter, the appellee has ten days to designate any additional contents to be included in the appendix.

Thus, within the scheme of the rules, even where the appellant has failed to mail or deliver a copy of the notice of appeal to counsel for the appellee (Rule 5A:1(10)), the appellee is put on notice of the appeal when the clerk of this court sends notice that the record has been filed. Significantly, the appellee is neither required nor permitted to do anything until that point in the appeal process. Moreover, because such appeals are a matter of right rather than by petition (Code § 17-116.05), the appellee has no reason to assume an appeal will not follow a favorable decision by the commission. In this context no prejudice results to the appellee nor can he assume the litigation has ended.

■ For these reasons we hold that the provision of Rule 5A:1(10) that a copy of the notice of appeal be mailed or delivered to opposing counsel does not defeat the "filing" of the notice of appeal with the clerk of the commission under Rule 5A:11(b) because this provision is directory rather than mandatory. In so holding, we do not suggest that this provision can be ignored by the bar. It is consistent with what we would assume would be done without a rule, in good practice and as a matter of professional courtesy. The failure to comply with the rule, however, where appeals are a matter of right, does not threaten the orderly administration of justice nor does it threaten to throw the judicial system into a state of chaos.

## II.

We turn now to the issue whether the evidence was sufficient to prove that Johnson unjustifiably refused employment procured for him suitable to his capacity under Code § 65.1-63.

In August, 1980, Johnson suffered an industrial injury to his back while employed by the City of Clifton Forge. As a result of

this injury he began receiving temporary total disability benefits. In May, 1981, Dr. John D. Varner, Johnson's treating physician, advised the City's insurance carrier that Johnson could return to full time work with some restrictions or be retrained through vocational rehabilitation. Over the next several years, Johnson participated in various rehabilitation and education programs initiated by his employer and its insurance carrier. From August, 1984 to October, 1986, Patricia B. Childers, a rehabilitation consultant, assisted Johnson in participating in various rehabilitation programs. In.May, 1986, Childers located a job for Johnson as a part-time cook at Hardee's restaurant in Covington, where Johnson resided. This job was approved by Dr. Varner. Johnson expressed concerns about his ability to perform this job because of his blood pressure. This job became unavailable before Dr. Raymond L. Claterbaugh, Jr. checked Johnson's blood pressure and found no significant hypertension.

In September, 1986, Childers learned that there was another opening for a part-time cook at Hardee's. A job description was obtained from Hardee's and after examining Johnson, Dr. Varner approved this job on September 16, 1986. A job interview was scheduled for September 18, 1986. Prior to this interview, Childers met with Johnson to prepare him for it. At that time Johnson expressed concerns about his ability to perform this job. These concerns were: (1) lack of reliable transportation to work, (2) limited reading ability, (3) fear of falling on a wet or greasy floor, and (4) not being an experienced cook. Childers advised Johnson that the insurance carrier would advance transportation repair expenses and that he would receive on the job training. Childers further discussed interviewing skills with Johnson. She advised him that in order to get the job he needed to present himself in a "positive" light to the employer rather than presenting himself in a "negative" manner by raising his concerns about his inability to perform the job. At the job interview, Johnson expressed his concerns to Fran Dawson, the Assistant Manager of Hardee's. Based on this interview, Dawson recommended to the manager that Johnson not be hired. As a result, Johnson was not offered the job at Hardee's.

On October 13, 1986, the employer and its insurance carrier filed their application seeking to terminate benefits on the ground that Johnson had not cooperated with rehabilitation and job place-

ment efforts. The deputy commissioner ruled for the employer and Johnson appealed to the full commission. By opinion dated May 29, 1987, the commission, with one dissent, affirmed the deputy commissioner and found that Johnson refused to cooperate with placement efforts of the employer and "this is tantamount to an unjustified refusal of selective employment." This appeal followed.

Code § 65.1-63 provides: "If an injured employee refuses employment procured for him suitable to his capacity, he shall not be entitled to any compensation at any time during the continuance of such refusal, unless in the opinion of the Industrial Commission such refusal was justified."

In *Ellerson v. W. O. Grubb Steel Erection Co.*, 1 Va. App. 97, 98, 335 S.E.2d 379, 380 (1985), we held that "in order to support a finding [of refusal] based upon Code § 65.1-63, the record must disclose (1) a *bona fide* job offer suitable to the employee's capacity; (2) procured for the employee by the employer; and (3) an unjustified refusal by the employee to accept the job." Relying on this language from *Ellerson,* Johnson argues on appeal that in his case "there was neither a job offer, nor if there was a job offer, was it *bona fide* and suitable to the employee's capacity nor was there an unjustified refusal by the employee to accept the job." This all-encompassing and somewhat circular argument is reflective of the commission's decision that Johnson's refusal to cooperate with placement efforts of the employer is "tantamount to an unjustified refusal of selective employment." Appellees, while citing no Virginia appellate authority, assume that no actual job offer was necessary in this case because the failure of Johnson to cooperate with rehabilitation and job placement efforts by the employer negates the requirement of a job offer. Appellees find support for this position in Code § 65.1-88 which requires an employer to provide vocational rehabilitation training to the employee at the direction of the commission and mandates that the unjustified refusal of the employee to accept such training shall bar the employee from further compensation until such refusal ceases.

It is readily apparent that where vocational rehabilitation training is appropriate and necessary to return an injured employee to the job market the success of such training will depend upon the cooperation of the employee. The success of such training will also ultimately affect the ability of the employer to procure suitable

employment for the employee. Thus, Code § 65.1-63 and Code § 65.1-88 must be considered together in those cases, such as the present case, where the condition of the employee invokes the application of both statutes.

In that context, we enter this circular factual and legal dispute by first addressing Johnson's argument that no job was offered to him, and therefore, he has not refused employment under Code § 65.1-63. Neither Johnson nor the appellees cite any Virginia appellate court authority directly on point.[1] Nor are we aware of any such authority. The reported cases arising under Code §§ 65.1-63 and 65.1-88 generally involve the suitability of the employment or the justification for refusal of employment or training. As a practical matter, we assume that in most cases if no offer is made the provisions of Code § 65.1-63 would not be invoked because there simply would be no employment to be refused.

In *Jules Hairstylists, Inc. v. Galanes*, 1 Va. App. 64, 334 S.E.2d 592 (1985), a case which involved the application of Code § 65.1-63, we affirmed a decision of the commission that the employer had not borne its burden of proving a change in condition based upon the ground that the employee refused to interview for selective employment. The commission resolved a credibility issue in favor of the employee who claimed she had not been advised by the employer's rehabilitation consultant of two job interviews and therefore her failure to attend those interviews was not a refusal of employment. In that case no job offer was made; while not raised on appeal, we acknowledged that the commission had previously held that if an employee fails without justification to keep a job interview, this amounts to a refusal of an offer of selective work suitable to his capacity. Thus, implicit in this court's affirmance in *Galanes* is the conclusion that a failure without justification to keep a job interview invokes the provisions of Code § 65.1-63. Similarly, logic dictates that an employee's actions at an interview could defeat an offer of employment being made and permit the employer to invoke Code § 65.1-63. Such a conclusion is not inconsistent with our decision in *Ellerson*. There, a conditional of-

---

[1] Appellees refer only to prior decisions of the commission holding that an offer of employment is not a prerequisite to a finding of refusal where there is no offer made due to a claimant's action. *See Pleasants v. Fairfax County Police Department*, 58 O.I.C. 289 (1978); *Flowers v. Clinebell*, 57 O.I.C. 124 (1976).

fer of employment was made and withdrawn before the condition was resolved. *Ellerson* involved the determination of a *bona fide* offer, not the lack of an offer.

■ More importantly, Code § 65.1-63 would be rendered meaningless if an employee could defeat its provisions by purposefully conducting himself in an interview so as to ensure that an employer would not make an offer of employment. In addition, where an employee had undergone vocational rehabilitation training pursuant to Code § 65.1-88, this code section also could be rendered meaningless and ineffective if the employee could ultimately defeat selective employment by his negative conduct at a job interview. Finally, the commission has the ability to weigh the evidence in a given case to determine whether an employee has purposely conducted a job interview to prevent an offer and ultimate employment from being procured by the employer. For these reasons, we hold where the commission determines on sufficient credible evidence that an employee unjustifiably refuses to cooperate with the placement efforts of the employer, such conduct is tantamount to an unjustified refusal of selective employment under Code § 65.1-63 and an actual offer of employment is not a prerequisite to a finding of such refusal.

Having determined that the lack of a job offer is not dispositive in this case, we turn now to a review of the commission's decision that Johnson's conduct at the job interview amounted to a refusal to cooperate with the placement efforts of the employer and thus was tantamount to a refusal of selective employment pursuant to Code § 65.1-63.

■ The essential facts are not in dispute; only the conclusions to be drawn from them are disputed. "Generally, the Commission's findings of fact are conclusive and binding on appeal, Code § 65.1-98, but where there is 'no conflict in the evidence, the question of the sufficiency thereof is one of law.'" *Payne v. Master Roofing & Siding, Inc.*, 1 Va. App. 413, 414, 339 S.E.2d 559, 560 (1986)(quoting *City of Norfolk v. Bennett*, 205 Va. 877, 880, 140 S.E.2d 655, 657 (1965)).

The employer does not dispute that employment opportunities for Johnson were limited because of his physical and educational limitations. The high rate of unemployment in the area in which he resides compounds the limited employment opportunities for

him. Johnson is a twenty-nine year old laborer with a right "foot drop" condition requiring the use of a brace and prescription shoes. He left school at age fifteen or sixteen after completing the sixth grade. He is functionally illiterate. Part of the rehabilitation program provided by the employer was an educational program at Total Action Against Poverty which brought Johnson's reading skills to a fourth grade level and his mathematical skills to a fifth grade level. In addition, in December, 1985, he completed a small engine repair course provided by his employer through Dabney Lancaster Community College. He is unable to engage in heavy labor and is limited in his lifting ability because of his back injury.

Notwithstanding these limitations, the evidence supports the conclusion that the cooking job at Hardee's was suitable to Johnson's capacity. The job description was approved by Dr. Varner, and Johnson's concerns about his ability to perform the job were adequately addressed and resolved by the rehabilitation consultant in conjunction with the prospective employer. Transportation was secured by the insurance carrier's offer to advance transportation repair expenses. Johnson was assured of receiving on-the-job training to resolve his concern that he was not an experienced cook. This training would assist him to learn to read the twenty symbols or letter combinations used at Hardee's to identify the orders to be prepared by the cook. In addition, Johnson was advised that the floor in the cooking area at Hardee's is continually cleaned so that the risk of slipping on it is minimized. Finally, the job would entail working four hours a day which would permit Johnson to continue his participation in the vocational rehabilitation program.

Thus, in the final analysis, the dispositive issue in this case becomes whether there is sufficient evidence to establish that Johnson's conduct at the interview in raising his concerns about his ability to perform this job was "tantamount to an unjustified refusal" of the job. In that regard a majority of the commission specifically found: "We agree with the contention of [Johnson] that his concerns were legitimate in nature, but we cannot help but believe that [Johnson] was fully aware that the manner in which he raised the issues with the prospective employer were such that it would prevent him from obtaining the position." The commission apparently reached this conclusion, in part, on the un-

refuted testimony of the manager at Hardee's that Johnson was not offered the job because the assistant manager got the impression at the interview that Johnson did not want to work, and, in part, because Johnson's reference to his concerns at the interview were "negative actions" rather than positive. The commission characterized Johnson's actions as negative because the rehabilitation consultant had counseled him "to be positive in his attitude toward the position" at the interview and because his concerns had been addressed previously by the consultant.

We need not resolve whether Johnson's conduct at the interview was negative or positive in a subjective sense. The evidence concerning the interview is not in conflict, and accordingly, we review it to determine its sufficiency as a matter of law to establish a refusal of the job. In that context, the evidence supports the commission's finding that Johnson's concerns were "legitimate." Legitmate concerns are founded in truth. The employee has the right, if not the duty, to discuss legitimate concerns directly with a prospective employer. The employee is not prevented from doing so merely by the prior assurances of the insurance carrier's rehabilitation consultant. The very purpose of the job interview is to permit both the prospective employer and the employee to determine in advance that the intended relationship will be mutually acceptable. The truthful discussion of the employee's concerns of his disabilities is a part of that process.

In this case, there is no evidence that Johnson misrepresented the extent of his disabilities. He is required to wear a leg brace and prescription shoes, is functionally illiterate and not an experienced cook. His successful performance of the proposed job would depend on the success of the job training to be furnished by the prospective employer. In short, under the best of circumstances, Johnson could not present himself at the interview as the most desirable of employees. Furthermore, there is no objective evidence that Johnson's truthful discussion of his disabilities at the interview was reasonably expected to prevent an offer of employment being made to him. He appeared at the interview neatly dressed and was truthful. The prospective employer was already aware of his disabilities. In contrast, the only evidence that he did not legitimately express his concerns was the subjective impression formed by the prospective employer. In short, all that can be concluded from the facts of this case is that, in the opinion of the

prospective employer, Johnson did not interview well. Under these circumstances, the evidence is not sufficient as a matter of law to support the commission's finding that Johnson refused employment. Where, as here, the employee is truthful, does not misrepresent the extent of his disabilities, and there is no objective evidence that the truthful discussion of his disabilities was reasonably expected to prevent an offer of employment being made, the subjective impression of the prospective employer that he would not be a good employee formed on the basis of a poor interview does not satisfy the employer's burden under Code § 65.1-63.

For these reasons the decision of the commission is reversed.

*Reversed.*

Coleman, J., concurring.

I concur that Johnson's appeal should not be dismissed for his failure to send a copy of the notice of appeal to opposing counsel in accordance with Rules 5A:11 and 5A:1(10). However, I join Judge Moon in the reasons which he assigns for refusing to bar Johnson's appeal. In view of the inconsistency in the rules, which Judge Moon noted, and since no prejudice has been demonstrated, I too would not invoke the sanction of dismissal.

I join Chief Judge Koontz in holding that the evidence is insufficient to find that Johnson unjustifiably refused selective employment which disqualified him from receiving workers' compensation benefits under Code § 65.1-63.

Moon, J., concurring in part, dissenting in part.

I concur with the majority that Rule 5A:11 should not be applied to bar Johnson's appeal in this case because, even though he did not send a copy of the notice of appeal to opposing counsel in accordance with the rule, the rule's meaning is unclear and provides a trap for the unwary. Rule 5A:11, which concerns filing appeals from the Industrial Commission, uses the phrase "files with the Clerk" to describe two actions: sending the notice of appeal to opposing counsel and then filing the notice of appeal with the clerk. The rule itself does not require that the notice be sent to opposing counsel. To discern the meaning of the phrase "files with

the clerk," the reader of Rule 5A:11 must turn to Rule 5A:1(10), which defines the phrase to mean both sending the notice to counsel and delivering to the clerk's office. This construction is particularly confusing since Rule 5A:6, which concerns filing appeals from trial courts, uses the phrase "files with the clerk" to mean only one action: delivering the notice of appeal to the clerk. Rule 5A:6 explicitly states that an appellant must deliver a copy of the notice of appeal to opposing counsel. The explicit direction to send a copy of the notice to counsel may have been inadvertently left out of Rule 5A:11, but it is not fair to apply the serious sanction of dismissal in this case since the inconsistency in the language of the rules is the cause of the filing defect in Johnson's appeal and no prejudice has been demonstrated.

However, I dissent from the majority's finding that Johnson did not unjustifiably refuse employment at Hardee's. I do not read the Industrial Commission's decision as holding that a person cannot express legitimate concerns to a prospective employer. In this case, the evidence does not show that the Industrial Commission was wrong in determining that the appellant was negative in his interviews at Hardee's. The employment counselor had discussed appellant's concerns with the prospective employer and the employer did not consider them to be a problem. Appellant was instructed to be positive in the interview, but he nevertheless brought up his concerns in a negative manner that defeated his prospect of getting the job.

A person receiving worker's compensation has a duty to cooperate in efforts to get him a job he is capable of performing. *Thompson v. Hampton Institute*, 3 Va. App. 668, 353 S.E.2d 316 (1987).

Today's decision is a blueprint for every malingerer faced with an obligation to try to market his remaining work ability: be sufficiently negative when interviewing for a job and your compensation will continue. Thus, the decision undermines the policy of Code § 65.1-63 and is equivalent to the behavior of the appellant in *Jules Hairstylists, Inc. v. Galanes*, 1 Va. App. 64, 334 S.E.2d 592 (1985), where we affirmed the termination of compensation to an appellant who had not shown up for a scheduled interview.

I believe that credible evidence supported the commission's finding that appellant unjustifiably refused to cooperate with his pre-

vious employer's placement efforts and his conduct constitutes an unjustifiable refusal of selective employment under Code § 65.1-63.