**Richmond**
## WILLIE H. JOHNSON
v.
## CITY OF CLIFTON FORGE
No. 0839-87-3
Decided February 6, 1990

Counsel

Edward L. Weilbacher (The Legal Aid Society of Roanoke Valley, on brief), for appellant.

Brian R. Jones (Woods, Rogers & Hazlegrove, on brief), for appellees.

## UPON REHEARING EN BANC

Opinion

MOON, J.—The sole issue in this workers' compensation appeal is whether the evidence was sufficient to prove that Willie H. Johnson unjustifiably refused employment procured for him suitable to his work capacity. Code § 65.1-63. We affirm the Industrial Commission and hold that an employee who so unreasonably behaves at a job interview that he undermines the prospect of getting a job available to him is barred by Code § 65.1-63 from further compensation because his actions are the equivalent of unreasonably refusing selective employment.

Code § 65.1-63 provides that "[i]f an injured employee refuses employment procured for him suitable to his capacity, he shall not be entitled to any compensation at any time during the continuance of such refusal, unless in the opinion of the Industrial Commission such refusal was justified."

In *Ellerson v. W.O. Grubbs Steel Erection Co.*, 1 Va. App. 97, 98, 335 S.E.2d 379, 380 (1985), we held that "in order to support a finding [of refusal] based upon Code § 65.1-63, the record must disclose (1) a bona fide job offer suitable to the employee's capacity; (2) procured for the employee by the employer; and (3) an unjustified refusal by the employee to accept the job." Furthermore, a person receiving workers' compensation has a duty to cooperate in efforts to get him a job he is capable of performing. *Cf. Thompson v. Hampton Inst.*, 3 Va. App. 668, 353 S.E.2d 316 (1987). Here, there was no actual job offer. The employer did not offer Johnson a job because of Johnson's behavior at the job

interview. In other cases, the commission has held that there does not have to be an actual offer of employment as a prerequisite to a finding of an unjustified refusal where no offer is made due to a claimant's failure to attend an interview. *Pleasants v. Fairfax County Police Dep't*, 58 O.I.C. 289 (1978); *Flowers v. Clinebell*, 57 O.I.C. 124 (1976). In *Jules Hairstylist, Inc. v. Galanes*, 1 Va. App. 64, 344 S.E.2d 592 (1985), we agreed with the commission and held that a failure to keep an interview is tantamount to refusal of an offer. In this case, we hold that when an employee's conduct at a job interview is unreasonable and calculated to prevent an actual offer of employment, similar reasoning dictates a conclusion that such conduct is tantamount to an unjustified refusal of employment. In such a case, compensation may be denied assuming the job was suitable to the employee's work capacity.

■ On appeal, the Industrial Commission's findings of fact are conclusive and binding if based on credible evidence. *V.P.I. & State Univ. v. Wood*, 5 Va. App. 72, 74, 360 S.E.2d 376, 377 (1987). The facts, construed in the light most favorable to the prevailing party before the commission, are as follows. Due to physical and educational problems, Johnson's job skills were limited even before his accident. He had a right "foot drop" condition which required the use of a brace. He left school at age 15 or 16 after completing the sixth grade. In 1980, Johnson, while employed by the City of Clifton Forge, Virginia, sustained a compensable back injury. Since that time, with the exception of two brief periods during 1983, he has received temporary total disability benefits.

In 1981 Johnson's treating physician determined that he could return to full time work with some restrictions or be retrained for other work through vocational rehabilitation. The employer and insurer initiated rehabilitation efforts in 1982 to assist Johnson in his return to the work force. Johnson began an evaluation work adjustment training program at the Alleghany Highland Work Center. During the course of the program, he missed numerous days, and overall, performed poorly and was a disruptive force due to excessive talking. The foreman of the woodshop was left with the impression that Johnson saw the program "simply as an obligation to maintaining his disability." In addition, Johnson failed to keep appointments with his doctor, a counselor for the Virginia

Department of Rehabilitative Services, and his rehabilitation consultant.

Patricia B. Childers, his rehabilitation consultant, worked with Johnson from August, 1984, to October, 1986, and found that he was generally not cooperative. She arranged for Johnson's enrollment in an eighth-grade equivalency program and, at his request, a small engine repair class. She also attempted to find employment for him. His attendance in the eighth-grade equivalent program was sporadic. Although he obtained a certificate indicating completion of the small engine repair program, his instructor said he did not regularly attend classes. Johnson's reading skills tested on a fourth-grade level and his mathematics skills tested on a fifth-grade level.

In May 1986, the consultant located a job for Johnson as a part-time cook at Hardee's Restaurant in Covington, where Johnson resided. Johnson's doctor approved this job as being within Johnson's capacity. However, Johnson expressed concerns about his ability to perform the job because of his blood pressure. Before his blood pressure could be checked, the job became unavailable. The blood pressure check revealed that Johnson had no significant blood pressure problem.

With this background, we address the specific incidents that gave rise to the issue on this appeal. In September, 1986, the consultant again found an opening for Johnson as a part-time cook at Hardee's. Again, Johnson's doctor approved the job description as being within Johnson's work capacity. After a job interview was scheduled, the consultant met with Johnson to prepare him for the interview. At that time Johnson expressed concerns about his ability to perform this job. These concerns were (1) lack of reliable transportation to work, (2) limited reading ability, (3) fear of falling on a wet or greasy floor, and (4) not being an experienced cook. The job consultant advised Johnson that the insurance carrier would assist Johnson financially in having his automobile repaired so that he could get to the job and that Hardee's would provide job training for him. The transportation offer was made even though an employer is not required to provide transportation. *See Klate Holt Co. v. Holt*, 229 Va. 544, 547, 331 S.E.2d 446, 448 (1985). The consultant further advised Johnson that she had discussed his inability to read with Hardee's manager and the manager had stated that it was not a problem because the proce-

dures were simple and he would not need to read. Johnson would be trained to recognize the twenty symbols or letter combinations used at Hardee's to identify orders to be prepared by the cooks. The job consultant also advised Johnson that the employer washed the floor frequently to prevent hazards in walking. Prior to the interview, Johnson discussed with his doctor his fear of slipping on a wet floor. His doctor told him to be careful. The doctor apparently did not think it was a concern that should keep Johnson from taking the job.

The consultant advised Johnson that, in order to get the job, he needed to present himself in a "positive light" to the employer rather than presenting himself in a "negative" manner by raising concerns about his inability to perform the job. At the job interview, however, Johnson expressed his same four concerns to Hardee's assistant manager in a manner which the manager termed "negative." The manager testified that had Johnson interviewed well he would have been offered the job, but in her opinion, at the interview, Johnson showed no interest in getting a job and made excuses for not wanting a job. We believe Johnson's behavior, in light of assurances previously made by the consultant and his own physician, provided credible evidence from which the commission could have inferred that Johnson knew that he was acting in a way that prevented him from getting the job and that his actions were unjustified.

The commission could reasonably question why Johnson believed it necessary to bring up the transportation concern with the prospective employer. Johnson only lived one mile from the place of employment. He had been advised by the job consultant that money would be provided to repair the automobile he would use for transportation. It was his duty to cooperate in trying to find a job. We, like the commission, can only conclude that he told the prospective employer that he might not be able to get to work on time for the purpose of discouraging the employer about his prospects as an employee.

Johnson's other three concerns were legitimate. It was reasonable for him to verify with the employer that the job was suitable for him. Johnson had a right to inquire into the safety of the working conditions. He had a right to be forthright about his reading ability and cooking skills. Johnson, however, did have some reading ability — fourth grade — and did prepare his own

meals at home. Rather than asking the prospective employer if she thought Johnson could do the job with his limitations, Johnson expressed to the employer his own doubt that he could do the job and his doubt that he could get to work on time even if he could do the job.

The evidence supports the conclusion that the job at Hardee's provided for Johnson by his employer's insurer was suitable to Johnson's work capacity. Johnson's ability to perform the job was adequately proved by credible evidence. His doctor approved the job description as being within his capacity and the prospective employer found Johnson's skills adequate. Additionally, Johnson was to receive on-the-job training for ninety days. We also find adequate credible evidence to support the commission's conclusion that Johnson's behavior at the interview was unreasonable and calculated to prevent a job offer and that such conduct was tantamount to the refusal of a job offer.

Therefore, we affirm the commission's decision.

*Affirmed.*

Barrow, J., Cole, J., Duff, J., and Hodges, J., concurred.

Koontz, C.J., dissenting, joined by Judges Benton, Coleman and Keenan.

I respectfully dissent from the majority opinion in this case. In the panel decision, *Johnson v. City of Clifton Forge*, 7 Va. App. 538, 375 S.E.2d 540 (1989), for the reasons stated therein, we held that "where the commission determines on sufficient credible evidence that an employee unjustifiably refuses to cooperate with the placement efforts of the employer, such conduct is tantamount to an unjustified refusal of selective employment under Code § 65.1-63 *and an actual offer of employment is not a prerequisite to a finding of such refusal.*" *Id.* at 547, 375 S.E.2d at 546 (emphasis added). This holding is consistent with prior decisions of the commission and is reaffirmed by the majority *en banc* in this case. I continue to concur with this holding.

Pertinent to the present rehearing *en banc*, the holding that an actual offer of employment is not a prerequisite to a finding of a refusal of selective employment under Code § 65.1-63 is premised, in part, on the analysis that this Code section would be rendered

meaningless if an employee could defeat its provisions by purposefully conducting himself in an interview so as to ensure that a prospective employer would not make an .offer of employment.[1] Implicit in this analysis, however, is that the employer has the burden of showing that the employee *purposefully* conducted himself in the interview so as to ensure that the prospective employer would not make an offer of employment. The requirement that the employer prove purposeful conduct by the employee is placed on the employer because it is a matter of human experience and common sense that many subjective factors may form the basis of an unfavorable impression by a prospective employer at a job interview which causes a prospective employer not to offer a job to an otherwise qualified employee. Similarly, such an impression is not always the result of purposeful conduct by the prospective employee and may be, in fact, contrary to the desire and intent of the employee. Thus, even where the prospective job is within the employee's capacity, proof of an unsuccessful interview alone is not sufficient to invoke the provisions of Code § 65.1-63.

In this context, my disagreement with the majority begins with the standard of appellate review applicable to this appeal. The essential facts are not in dispute. What is in dispute is the sufficiency of the employer's evidence to establish that Johnson purposefully conducted himself at the job interview to ensure that Hardee's would not make him an offer of employment. Our review of the sufficiency of the evidence is one of law. *See Payne v. Master Roofing & Siding, Inc.,* 1 Va. App. 413, 414, 339 S.E.2d 559, 560 (1986). In my view, the standard of review expressed in *V.P.I. & State University v. Wood,* 5 Va. App. 72, 74, 360 S.E.2d 376, 377( 1987), that the commission's findings of fact are conclusive and binding on the appellate court if based on credible evidence, is not dispositive of the issue presented by this appeal. Moreover, the majority's reliance on this standard has compelled it to reach what I believe is an unsupportable conclusion of law in this case.

The essential undisputed facts are that Johnson is a twenty-nine year old laborer with a right "foot drop" condition requiring the use of a brace and prescription shoes. He left school at age fifteen or sixteen after completing the sixth grade. He is functionally illiterate. Part of the rehabilitation program provided by the employer

---

[1]  Similarly Code § 65.1-88 would be rendered meaningless if negative conduct by the employee were permitted.

was an educational program at Total Action Against Poverty which brought Johnson's reading skills to a fourth-grade level and his mathematical skills to a fifth-grade level. He is unable to engage in heavy labor and is limited in his lifting ability because of his back injury. He has been essentially unemployed since his original injury in 1980.

The cooking job at Hardee's was suitable to Johnson's capacity. The job description was approved by Dr. Varner. Johnson's concerns about his ability to perform the job were adequately addressed by the rehabilitation consultant in conjunction with the prospective employer. The prospective employer was aware of Johnson's disabilities. Prior to the interview, the consultant counseled Johnson "to be positive in his attitude toward the position." Johnson appeared at the interview neatly dressed. He expressed his concerns about his ability to perform the job in a truthful manner. He did not misrepresent the extent of his disabilities. Hardee's did not make an offer of employment.

Upon this evidence, a majority of the commission specifically found: "We agree with the contention of [Johnson] that his concerns were legitimate in nature, but we cannot help but believe that [Johnson] was fully aware that the manner in which he raised the issues with the prospective employer were such that it would prevent him from obtaining the position." This conclusion apparently was reached, in part, based on the testimony of the manger at Hardee's that Johnson was not offered the job because the assistant manager got the impression at the interview that Johnson did not want to work and in part, because Johnson's reference to his concerns at the interview were "negative actions" rather than positive. The commission characterized Johnson's actions as "negative" because the rehabilitation consultant had counseled him "to be positive in his attitude toward the position" at the interview and because his concerns had been addressed previously by the consultant. Based on these conclusions the commission determined that Johnson's conduct was tantamount to a refusal of selective employment which invoked the provisions of Code § 65.1-63. The dispositive issue on appeal is whether the employer produced sufficient evidence as a matter of law to support that determination.

The evidence clearly supports the commission's finding that Johnson's concerns about his ability to perform the job at

Hardee's which he expressed at the job interview were "legitimate." Legitimate concerns are those founded in truth. The employee has the right, if not the duty, to discuss legitimate concerns directly with a prospective employer. The employee is not prevented from doing so merely because he or she has been given assurances by the insurance carrier's rehabilitation consultant that such concerns have been addressed. The very purpose of the job interview is to permit both the prospective employer and the employee to determine in advance that the intended relationship will be mutually acceptable. The truthful discussion of the employee's concerns about his disabilities is a part of that process, even if it results in the prospective employer's unwillingness to offer employment.

In this case, there is no evidence that Johnson misrepresented the extent of his disabilities. He is required to wear a leg brace and prescription shoes, is functionally illiterate and is not an experienced cook. His successful performance of the proposed job would depend on the success of the job training to be furnished by the prospective employer. In addition, Johnson lived one mile from Hardee's and his automobile was in a state of disrepair. While, as the majority notes, the employer's insurance carrier had voluntarily agreed to advance money to repair the automobile, this money had not in fact been advanced and the car was not in a reliable condition at the time of the interview. In short, under the best of circumstances, Johnson could not present himself at the interview as the most desirable of employees.

Furthermore, there is no objective evidence that Johnson's truthful discussion of his disabilities and the condition of his automobile at the interview was reasonably expected or purposefully designed to prevent an offer of employment being made to him. He appeared at the interview neatly dressed and was truthful. The prospective employer was already aware of his disabilities. In contrast, the only evidence that he did not legitimately express his concerns was the subjective impression formed by the prospective employer. In short, all that can be concluded from the facts of this case is that, in the opinion of the prospective employer, Johnson did not interview well. Under these circumstances, the evidence is not sufficient as a matter of law to support the commission's finding that Johnson refused employment. Where, as here, the employee has legitimate concerns about his abilities to perform a

prospective job, is truthful and does not misrepresent the extent of his disabilities, he is justified in raising his concerns at a job interview. Under those circumstances without evidence that the employee purposefully raised his or her concerns to prevent an offer of employment being made, mere evidence of the subjective impression of the prospective employer, formed on the basis of a poor interview, that he or she would not be a good employee does not satisfy the employer's burden under Code § 65.1-63.

Finally, in contrast to this analysis, in my view, the majority rather than reviewing the sufficiency of the evidence as a matter of law, relies merely on the credible evidence standard of review to affirm the commission's conclusion that Johnson's conduct was calculated to prevent a job offer being made by Hardee's. I do not disagree that the prospective employer formed an unfavorable impression of Johnson's desire to work and that Johnson perhaps could have been more "positive" at the interview. Perhaps, if he had not truthfully mentioned his concerns at all, an offer would have been made by Hardee's. The fact remains, however, that Johnson had a right to discuss his legitimate concerns at the interview and the evidence that he did so purposefully to ensure that Hardee's would not offer him a job is at best equivocal. Equivocal evidence is not sufficient as a matter of law to sustain the employer's burden of proof in this case.

For these reasons I would reverse the decision of the commission.