COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Coleman and Willis

ROBERT DOUGLAS CLARK

v.   Record No. 1001-96-2                      MEMORANDUM OPINION[*]
                                                  PER CURIAM
FLUOR DANIELS/FLUOR CORPORATION              OCTOBER 8, 1996
AND
UNITED STATES FIDELITY AND
 GUARANTY COMPANY

              FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              (Walter C. Whitt, Jr., on brief), for
              appellant.

              (Gary L. Denton; Denton & Drash, on brief),
              for appellees.


      Robert Douglas Clark contends that the Workers' Compensation
Commission erred in (1) failing to consider as after-discovered
evidence Dr. Hallett H. Mathews' December 18, 1995 medical report
and Dr. Harold Young's February 6, 1996 and March 6, 1996 medical
reports; (2) terminating Clark's compensation benefits on the
ground that he failed to cooperate with vocational rehabilitation
services by acting in a rude and inappropriate manner during a
May 15, 1995 job interview; and (3) finding that the duties of
the job, which was the subject of the May 15, 1995 interview,
fell within his physical restrictions.  Upon reviewing the record
and the briefs of the parties, we conclude that this appeal is
without merit.  Accordingly, we summarily affirm the commission's

_____

      [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

decision.  Rule 5A:27.

                                I.

   In Williams v. People's Life Ins. Co., 19 Va. App. 530, 452

S.E.2d 881 (1995), this Court held as follows:

> The four requirements which must be met
> before the record will be reopened on the
> basis of after-discovered evidence are that:
>  (1) the evidence was obtained after the
> hearing; (2) it could not have been obtained
> prior to the hearing through the exercise of
> reasonable diligence; (3) it is not merely
> cumulative, corroborative or collateral; and
> (4) it is material and should produce an
> opposite result before the commission.

Id. at 532, 452 S.E.2d at 883.

   The commission did not consider Dr. Mathews' December 18,

1995 medical report or Dr. Young's February 6, 1996 and March 6,

1996 medical reports as after-discovered evidence.  As the

proponent of this issue, Clark bore the burden of proving that

these medical reports could not have been obtained before the

September 20, 1995 hearing.

   Clark suffered a compensable injury by accident to his back

on May 2, 1989.  Dr. Young, a neurosurgeon, began treating Clark

in August 1991.  Dr. Mathews began treating Clark in July 1995,

and recommended that Clark undergo additional surgery.  Yet,

Clark offered no evidence to the commission to explain why he

could not have obtained Dr. Mathews' opinion regarding causation

and Dr. Young's opinions before the September 20, 1995 hearing.

Indeed, the record indicates that the deputy commissioner left

the record open until October 4, 1995 for either party to submit

                                2

additional medical designations. Clark did not submit any additional medical designations prior to October 4, 1995. Because Clark failed to meet his burden of proving that these medical records could not have been obtained through the exercise of reasonable diligence, we cannot find that the commission erred in failing to consider these medical reports as after-discovered evidence.

## II. and III.

"[W]hen an employee's conduct at a job interview is unreasonable and calculated to prevent an actual offer of employment, . . . such conduct is tantamount to an unjustified refusal of employment. In such a case, compensation may be denied assuming the job was suitable to the employee's work capacity." Johnson v. City of Clifton Forge, 9 Va. App. 376, 378, 388 S.E.2d 654, 655 (1990) (en banc).

On appeal, we view the evidence in the light most favorable to the prevailing party below. R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990). So viewed, the evidence established that on January 16, 1995, Dr. Mark Ross, who performed a functional capabilities evaluation on Clark, opined that Clark could return to full-duty work, eight hours per day. Dr. Ross placed no restrictions on Clark's ability to sit, stand, walk or climb stairs, other than to indicate that Clark should be permitted to alternate sitting and standing. Dr. Ross also noted that Clark had no difficulties

3

with hand or foot movements.  Dr. Ross did not place any restrictions upon Clark's ability to drive.

Barbara Lowery, a senior rehabilitation specialist assigned to assist Clark with vocational placement in early 1995, testified that she scheduled a job interview for Clark with Jake Legare, owner of Wheel Services, Inc.  The job would have required Clark to drive Social Security and Medicare patients to and from their doctors' appointments during the daytime hours.

Lowery was present on May 15, 1995 during the interview. She and Legare continually asked Clark to stop interrupting Legare as he attempted to tell Clark about the job.  Clark interrupted Legare to state that although he had zero points on his DMV record, he had obtained speeding convictions and his insurance premiums were high.  Clark also interrupted Legare to say that he experienced back problems the previous week and that when he woke each morning he never knew whether he would be able to do anything that day.  During the interview, Clark appeared bored, drummed his fingers on the table, turned away from Legare, and shuffled papers.  When Legare offered the job to Clark, Clark stated, "Well, I have to take the job by law."

Legare told Clark that the patients he would be required to pick up lived in a lower income area of Newport News.  Clark responded that "white people don't go to those kinds of areas," that "those people lived there," and that he wouldn't go there. Legare assured Lowery and Clark that he had not had any

4

safety-related incidents with his drivers. When Clark started to draw a map outlining "black areas," Legare ended the interview and stated that it appeared that Clark did not want to have a job. When Clark persisted by asking Legare if he had any white drivers on his staff, Legare repeated that the interview was over.

Lowery then gave Legare a standard follow-up interview form to complete. As Legare completed the form, Clark went behind him and started reading over his shoulders. Clark then began yelling "This is a set up, you're just trying to get my benefits taken from me. This is all planned." Lowery and Legare asked Clark to leave the office several times. Finally, Clark stormed out of the office and slammed the door.

Clark testified that at the beginning of the interview Legare stated that he preferred to hire ex-military personnel because they were reliable. Clark stated that he felt defensive as a result of this comment, but he denied acting rude during the interview. Clark claimed that he became angry only after Legare called him a racist. Clark admitted that he expressed reservations about going into certain areas of Newport News, which he considered high crime areas. He also admitted that he informed Legare that if he completed the follow-up interview form, Clark's benefits would be terminated. Clark admitted telling Legare that the interview was a "set up," and he admitted that he became upset and left the office.

5

As fact finder, the commission was entitled to accept Lowery's testimony regarding Clark's behavior during the interview and to reject Clark's testimony concerning the interview. The determination of a witness' credibility is within the fact finder's exclusive purview. <u>Goodyear Tire & Rubber Co. v. Pierce</u>, 5 Va. App. 374, 381, 363 S.E.2d 433, 437 (1987). Lowery's testimony constitutes credible evidence to support the commission's finding that Clark's conduct during the interview was calculated to prevent the offer of employment and amounted to a refusal to cooperate with vocational rehabilitation services. Dr. Ross' opinions constitute credible evidence to support the commission's finding that the driver's job fell within Clark's restrictions. "The fact that there is contrary evidence in the record is of no consequence if there is credible evidence to support the commission's finding." <u>Wagner Enters., Inc. v. Brooks</u>, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991).

For the reasons stated, we affirm the commission's decision.

<u>Affirmed.</u>