COURT OF APPEALS OF VIRGINIA

Present:  Judges Willis, Bray and Senior Judge Hodges
Argued by Teleconference


FAIRFAX COUNTY SCHOOL BOARD
                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1903-96-4    JUDGE JERE M. H. WILLIS, JR.
                                         APRIL 15, 1997
LONNIE M. WRIGHT

          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Michael N. Salveson (Hunton & Williams, on
          briefs), for appellant.

          Robert O. Goff for appellee.


     On appeal from a decision of the Workers' Compensation

Commission reinstating benefits to Lonnie M. Wright, Fairfax

County School Board (Fairfax) contends that the commission erred

in determining that employment leads and other vocational

assistance offered to Wright did not constitute "vocational

rehabilitation efforts," the refusal of which would justify

suspension of compensation.  We reverse and remand.

     The commission's decision was based upon Code § 65.2-603

which provides in relevant part that:
          A. 3.  The employer shall also furnish . . .
          reasonable and necessary vocational
          rehabilitation services.  Vocational
          rehabilitation services may include
          vocational evaluation, counseling, job
          coaching, job development, job placement,
            on-the-job training, education and
          retraining, and shall be provided by a
          certified rehabilitation provider . . . .
          Such services shall take into account the

<hr>

     [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

employee's preinjury job and wage classifications; his age, aptitude and level of education; the likelihood of success in the new vocation; and the relative costs and benefits to be derived from such services.

B.  The unjustified refusal of the employee to accept such . . . vocational rehabilitation services when provided by the employer shall bar the employee from further compensation until such refusal ceases . . . .

I.

Fairfax employed Wright as a delivery truck driver for over twenty years.  On April 22, 1991, Wright injured his back while working.  Following surgery in July, 1991, he returned to work but re-injured his back.  Fairfax accepted Wright's claim, and provided him compensation pursuant to an award for temporary total disability.

On February 14, 1995, Dr. Stephen Sirota examined Wright. He reported that Wright opposed lumbar epidural injections or further surgery.  Dr. Sirota stated that: "Unfortunately, in his present condition I do not feel that he can do any meaningful physical labor and probably would not be able to tolerate even a full time sedentary job."

On April 6, 1995, Dr. Ronald Childs released Wright to work four hours per day for one month, followed by full time sedentary work with no lifting over twenty pounds.  On April 27, 1995, Dr. Sirota released Wright for "light sedentary work," under the same conditions set by Dr. Childs.

On July 28, 1995, Dr. Sirota reported that Wright slept with

difficulty, could sit for only fifteen minutes, and could walk only one or two blocks.

On August 14, 1995, Dr. Katherine Maurath examined Wright and reported that he was "unable to do any physical work at this time." Dr. Maurath concluded that:

> 4. Given his inability to read and physical disability, I would recommend that this patient be considered for retirement on medical disability. He is unable to do the job for which he was hired and cannot, in his current state, be replaced in a sedentary position because of his inability to read.

On November 27, 1995, Dr. Thomas Schuler released Wright to work four hours per day, with one hour standing, one hour walking, and two hours sitting. He restricted Wright from lifting more than fifteen pounds, bending, climbing, kneeling, twisting, squatting, pushing, or pulling. On December 20, 1995, Dr. Schuler noted that Wright was "still having pain."

On January 19, 1996, Dr. Maurath reexamined Wright and imposed the following restrictions:

> 1. Sedentary work is recommended for this patient with frequent allowance for position changes. He should not lift any object heavier than 2 lbs. He is not permitted to bend. Essentially, he is restricted to sedentary work, however, the patient is functionally illiterate, so any work involving written or reading materials is not possible for him. It would appear to me that he is permanently and totally disabled secondary to a combination of his lumbar pathology and his limited educational level and reading skills.

Dr. Maurath based her opinion concerning Wright's literacy upon

his eighth grade level of education, discussions with Mr. and Mrs. Wright, and her "extensive experience with work related rehabilitation efforts" as a physiatrist.

## II.

In February, 1995, Maria Raimundi, a case manager for CRA Managed Care, Inc., began trying to help Wright find suitable employment. She met with Drs. Childs and Sirota to determine Wright's physical abilities, and later received a physical capacity evaluation form from Dr. Schuler. Ms. Raimundi stated that she did not review Dr. Maurath's reports.

Starting in June, 1995, Ms. Raimundi met weekly with Wright. She referred to the Dictionary of Occupational Titles to determine what jobs were suitable for him and presented him with a list of approximately ninety leads. This list consisted primarily of driver/delivery jobs. She testified that Wright applied to two jobs only because he felt that he was incapable of meeting the physical and intellectual requirements. Ms. Raimundi neither contacted the proposed employers regarding the specific requirements of the positions, nor provided Wright's physicians with job descriptions.

Ms. Raimundi testified that she was unable to obtain an objective appraisal of Wright's literacy, but was aware that he had completed the eighth grade. She offered to assist him in filling out applications and provided him with information regarding continuing his education.

III.

Fairfax contends that the commission erred in refusing to suspend Wright's benefits because he failed to cooperate with vocational rehabilitation efforts, pursuant to Code § 65.2-603. Fairfax argues that the "reasonableness and necessity" of the vocational rehabilitation services provided to Wright raises a mixed question of law and fact, and that we should review the commission's opinion de novo. Cf. City of Salem v. Colegrove, 228 Va. 290, 293, 321 S.E.2d 654, 656 (1984). This argument is without merit. No doubt, the employer's job placement program constitutes "reasonable and necessary" vocational rehabilitation efforts under Code § 65.2-603. However, that is not the issue before us. Rather, the question presented here is whether credible evidence in the record supports the commission's finding that the employer failed to establish that Wright unjustifiably refused vocational rehabilitation services.

On appeal, we view the evidence in the light most favorable to the party prevailing below. Crisp v. Brown's Tysons Corner Dodge, Inc., 1 Va. App. 503, 504, 339 S.E.2d 196, 196 (1986). The findings of the commission, if based upon credible evidence, are conclusive and binding on this Court. Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986).

First, we reject Wright's assertion that no vocational rehabilitation services were provided. Code § 65.2-603 requires

that vocational rehabilitation services "shall be provided by a certified rehabilitation provider."  See Code §§ 54.1-3510 et seq. (governing certification of rehabilitation providers).  Wright contends that because the record does not establish that Ms. Raimundi was certified, he did not receive "vocational rehabilitation services."  This issue was not presented to the commission.  Therefore, we will not consider it for the first time on appeal.  Rule 5A:18.

Second, Fairfax contends that it provided Wright numerous job leads that were clearly within his physical and mental capabilities, and that he unjustifiably refused to pursue new employment.  The commission held that Wright's failure to pursue the job leads did not justify suspending his benefits because the rehabilitation consultant had failed "to directly contact employers to determine whether the claimant's physical restrictions or illiteracy would be obstacles to his performance of these jobs."

An employer who contends that a claimant has failed to cooperate with job placement services bears the initial burden of proving that the job leads provided were appropriate to the claimant's residual capacity.  Thus, where prior medical approval is not secured for a prospective job, the employer must demonstrate that the job "obviously" fits within the limitations provided by the claimant's physician.  See Talley v. Goodwin Brothers, 224 Va. 48, 52, 294 S.E.2d 818, 820-21 (1982).

Consultation with a claimant's physicians, review of past job experience and education, and consideration of the claimant's mental and physical capabilities are all essential to securing employment. Code § 65.2-603 seeks relief for the employer from the payment of benefits and of the claimant's successful reentry into the work force as a productive member of society. See Colegrove, 228 Va. at 294, 321 S.E.2d at 656.

These twin goals are underscored by a balancing of interests. The employer's justified desire for the claimant's reemployment and the health, welfare and dignity of a claimant remain equally important. Prior medical approval, detailed job descriptions specifying the mental and physical requirements of a position, and direct contact with prospective employers to confirm the availability of jobs and their suitability to the individual claimant constitute acceptable methods by which a vocational consultant may purge inappropriate job leads. This enables the claimant to avoid futile pursuit of unsuitable employment and prevents lengthening of the period in which the employer remains liable to the claimant for benefits.

In this case, the vocational consultant neither obtained medical approval for the job leads, nor contacted the prospective employers to determine their expectations of an employee. Moreover, she did not furnish Wright with descriptions of the job performance requirements. While many of the positions appeared similar to Mr. Wright's previously held job, the lack of

meaningful information in the record regarding the physical and mental requirements for the positions renders us unable to conclude that the jobs were "obviously" compatible with Wright's severe physical restrictions.

Fairfax argues that because it made job leads available to Wright and he failed to pursue them, he must prove that his failure to pursue the leads was justified. That analysis does not apply here. See Ellerson v. W.O. Grubb Steel Erection Co., 1 Va. App. 97, 98, 335 S.E.2d 379, 380 (1985). An employer contending that a claimant unjustifiably refused job placement efforts must prove that the job leads were bona fide. Bona fide job leads consist of available employment positions reasonably compatible with the claimant's capacities. As we noted above, it is not obvious that the job leads were bona fide. Thus, the commission's findings were supported by credible evidence.

Third, Fairfax contends that Wright unjustifiably failed to cooperate with efforts to evaluate and, if necessary, to improve his level of education. Code § 65.2-603 rests upon a bedrock of cooperation, and a claimant must cooperate with reasonable and necessary efforts designed to achieve reemployment. Johnson v. City of Clifton Forge, 9 Va. App. 376, 377, 388 S.E.2d 654, 655 (1990). Thus, concomitant with an employer's obligation to give assistance, stands the claimant's obligation to accept it.

Ms. Raimundi testified that Wright refused to attempt remedial education and refused to be tested to determine his

suitability for such a remedial effort.  She testified that she suggested GED training, and that Wright told her that he was not interested.  She said she sought to have him tested to determine his suitability for remedial education, but he refused to take the test.  Justifying his refusal, Wright said:

> But I told her what is the use of me going to try to do that when I know myself my capabilities . . . what I could learn and what I can't learn.  I'm 43 years old, and I been in, you know, 43 years old, and I haven't learned nothing yet.  And I have my sisters and stuff.  They try to help me and stuff.  I already been through that.  It's embarrassing, but . . . .

> The commission found that:
> At age 43, the claimant is certainly a candidate for vocational rehabilitation, and if illiteracy is an obstacle then this area should be addressed.  However, we do not find that the vocational rehabilitation efforts in this case meet the Commission's criteria for suspending benefits.

Cooperation suggests working with another for a common purpose.  Conversely, a failure to cooperate necessarily implies a refusal to work with another toward achieving the established goal.  The record establishes without question that Wright refused to make even a minimal effort toward investigating his suitability for remedial education and, through education, vocational rehabilitation.  Thus, the commission erred in finding that Fairfax had failed to prove that Wright unjustifiably refused reasonable vocational rehabilitation efforts.

The judgment of the commission is reversed, and this case is

remanded to it for entry of an order suspending benefits so long as Wright continues without justification to reject reasonable vocational rehabilitation efforts.

<u>Reversed and remanded.</u>