COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Coleman and Willis


JOHN D. LUCEY & SON PLUMBING
AND
POTOMAC INSURANCE COMPANY OF ILLINOIS
                                        MEMORANDUM OPINION[*]
v.    Record No. 1003-98-1                 PER CURIAM
                                        SEPTEMBER 8, 1998
RONALD TATEM


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            (Bradford C. Jacob; Taylor & Walker, on
            brief), for appellants.

            (Kevin L. Hubbard, on brief), for appellee.


     John D. Lucey & Son Plumbing and its insurer (hereinafter

referred to as "employer") contend that the Workers' Compensation

Commission ("commission) erred in finding that (1) a de facto

award existed; (2) Ronald Tatem's ongoing disability was causally

related to his October 27, 1995 injury by accident; (3) Tatem did

not unjustifiably refuse selective employment; and (4) employer

was responsible for the cost of medical treatment related to

Tatem's psoriatic condition.  Employer also contends that the

commission erred in considering Dr. Richard T. Holden's June 2,

1997 medical report as evidence.  Upon reviewing the record and

the briefs of the parties, we conclude that this appeal is

without merit.  Accordingly, we summarily affirm the commission's

decision.  See Rule 5A:27.

_____

     [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

## I. De Facto Award

The commission ruled that a de facto award existed, obviating the need for Tatem to prove that he reasonably marketed his residual skills or that his disability was causally related to his compensable injury by accident. As a result, the commission placed the burden on employer to prove that Tatem's on-going disability was not causally related to his compensable industrial injury. In so ruling, the commission found the following:

> We decline to establish a bright line test for determining how many weeks of voluntary payments are enough for a de facto award. Here, the employer not only paid benefits for about twenty weeks but hired a vocational rehabilitation provider to help locate work and did not contest the compensability of the claim at the hearing. . . . [T]here is no evidence that [Tatem] declined to sign any agreements.
>
> When we consider all of the employer's actions, we agree with the Deputy Commissioner that is was reasonable to infer that the parties had reached an agreement as to the payment of compensation.

The record amply supports the commission's findings that employer voluntarily paid benefits to Tatem, did not contest the compensability of the claim at the hearing, and hired a rehabilitation counselor to help Tatem find work. Pursuant to our holding in National Linen Serv. v. McGuinn, 5 Va. App. 265, 268-71, 362 S.E.2d 187, 188-90 (1987) (en banc), and under the circumstances of this case, we cannot say that the commission erred in ruling that a de facto award existed and in allocating

the burden of proof to employer.

## II.  Disability

On appeal, we view the evidence in the light most favorable to the party prevailing below.  See R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990).  Unless we can say as a matter of law that employer's evidence sustained its burden of proof, the commission's findings are binding and conclusive upon us.  See Tomko v. Michael's Plastering Co., 210 Va. 697, 699, 173 S.E.2d 833, 835 (1970).

In ruling that employer failed to prove that Tatem's ongoing disability was not causally related to his compensable accident, the commission found as follows:

> Dr. Holden believes that [Tatem's] psoriatic arthritis was a significant reason for his disability but also believes that the claimant had nerve damage from a fragment of a ruptured disc and that the psoriatic arthritis caused an inflammatory process.  In his most recent report of June 2, 1997, Dr. Holden again expressed his inability to determine the exact cause or causes of [Tatem's] continuing disability.  He stated [Tatem's] psoriatic arthritis "[m]ust be put under control before any further (orthopedic) evaluations can be done."
>
> Dr. Holden is unable to render an opinion as to the cause of [Tatem's] continuing problems and has not excluded [Tatem's] industrial accident as a cause. The principle is well established that full benefits are allowed where a disability has two causes, one related to the employment and one unrelated.

Based upon Dr. Holden's expressed inability to determine the extent to which Tatem's industrial accident contributed to his

ongoing disability and the lack of any medical opinion ruling out the industrial accident as a cause of Tatem's continuing disability, the commission could reasonably infer that Tatem's disability had two possible causes, one-work related and one non-work-related.  Applying the "two-causes" rule, the commission did not err in awarding Tatem continuing disability benefits. See Shelton v. Ennis Business Forms, Inc., 1 Va. App. 53, 55, 334 S.E.2d 297, 299 (1985).  Accordingly, we cannot find that employer's evidence sustained its burden of proving that Tatem's disability was not causally related to his compensable injury by accident.

### III.  Unjustified Refusal of Selective Employment

"To support a finding of refusal of selective employment 'the record must disclose (1) a bona fide job offer suitable to the employee's capacity; (2) [a job offer that was] procured for the employee by the employer; and (3) an unjustified refusal by the employee to accept the job.'"  James v. Capitol Steel Constr. Co., 8 Va. App. 512, 515, 382 S.E.2d 487, 489 (1989) (quoting Ellerson v. W.O. Grubb Steel Erection Co., 1 Va. App. 97, 98, 335 S.E.2d 379, 380 (1985)).

In affirming the deputy commissioner's decision that Tatem's conduct at his job interview did not sabotage the possibility of employment as a janitor with Community Alternatives, the commission found as follows:

> According to [Tatem's] testimony, he told the prospective employer that he had reservations about whether he could perform

> the duties. [Tatem] testified "I told them I wasn't sure if I could do that, I would try. I would try the best I could."
>
> [Tatem's] testimony is substantially corroborated by the testimony of the vocational rehabilitation counselor who was advised by the prospective employer that [Tatem] "[s]tated that he wasn't sure if he was able to do the job." The prospective employer did not offer the job to [Tatem] because they could not hire someone "[i]f they don't feel that they can do the job."
>
> [Tatem] expressed his concern, admittedly subjective, about his ability to perform the job. Most importantly, he also stated his willingness to try.
>
> Just one month before this job interview, on September 3, 1996, Dr. Holden reported that [Tatem] could perform a sedentary job on "a trial basis," that [Tatem] would experience pain if he sat or stood too long and that he needed to alternate sitting and standing every fifteen to twenty minutes. We find [Tatem] reasonably expressed concern about his ability to perform a job, which, as described in the job description, required him to stand for three hours and sit for less than one.

Those findings are supported by Tatem's testimony, which was corroborated by the vocational rehabilitation counselor, and the commission's resolution of the conflict between the standing/sitting requirements stated in the job description and Dr. Holden's September 3, 1996 trial release to sedentary employment with alternate standing and sitting every fifteen minutes. Thus, we cannot find that Tatem's conduct at the job interview was unreasonable and calculated to prevent an actual offer of employment. See Johnson v. City of Clifton Forge, 9 Va. App. 376, 378, 388 S.E.2d 654, 655 (1990) (en banc). Accordingly, the commission did not err in finding that Tatem's

conduct did not constitute an unjustified refusal of selective employment with Community Alternatives.

We also hold that the commission did not err in finding that Tatem did not unjustifiably refuse or sabotage a position with White's Nursery and Greenhouse, Inc. ("White's") as a greenhouse production worker. Employer speculated that information contained on Tatem's job application regarding his inability to lift over forty-five pounds caused White's not to grant Tatem an interview or offer him a job. However, no evidence proved why White's did not grant Tatem an interview or offer him a job. Rather, the evidence established that Tatem, who cannot read or write, received assistance from the vocational rehabilitation counselor and/or family members in completing the application. No evidence proved who wrote the statements regarding Tatem's lifting ability on the job application. Moreover, the rehabilitation counselor admitted that the job with White's did not require lifting more than twenty-five to thirty pounds.

Thus, the evidence failed to establish that the commission erred in ruling that Tatem did not unjustifiably refuse selective employment with White's.

### IV. Psoriatic Condition/Causation

Based upon Dr. Holden's June 2, 1997 medical report, the commission could reasonably infer that treatment of Tatem's psoriatic arthritis condition was a medically necessary component of the successful and complete evaluation of the orthopedic

problems caused by Tatem's compensable injury by accident.  In light of these circumstances and our holding in Papco Oil Co. v. Farr, 26 Va. App. 66, 74, 492 S.E.2d 858, 862 (1997), we cannot say that the commission erred in holding employer responsible for the cost of medical treatment necessary to bring Tatem's pre-existing psoriatic arthritis condition under control in order to treat his work-related condition.

### V.  Dr. Holden's June 2, 1997 Medical Report

Page forty-nine of the transcript of the June 10, 1997 hearing reflects that the deputy commissioner left the record open for fourteen days, without objection from employer, to allow Tatem to designate Dr. Holden's June 2, 1997 medical report as part of the record.  Thus, although the commission's opinion incorrectly cited to page forty-seven of the transcript, the commission correctly found that the deputy commissioner left the record open for Tatem to file the report.

The record shows that Tatem filed Dr. Holden's June 2, 1997 report with the commission on June 10, 1997, before the fourteen-day period expired.  Accordingly, the commission did not err in considering that report in rendering its decision.

For the reasons stated, we affirm the commission's decision.

Affirmed.