## Richmond

EDGAR JAMES

v.

CAPITOL STEEL CONSTRUCTION CO. AND MANU-
FACTURES ALLIANCE INSURANCE COMPANY

No. 0924-88-2

Decided August 8, 1989

COUNSEL

Susan E. Cummins (Ashcraft & Gerel, on brief), for appellant.

Mary Louise Kramer (Lynn Murphy Tucker; Sands, Anderson, Marks & Miller, on brief), for appellee.

OPINION

**BENTON, J.**—Edgar James raises two issues in this appeal: (1) whether the Industrial Commission erred in finding that he unjustifiably refused to cooperate with rehabilitation efforts pursuant to Code §§ 65.1-63 and 88; and (2) whether his statement at the commission hearing that he would cooperate was sufficient to cure

the refusal to cooperate. Finding no error, we affirm the decision of the commission.

## I.

James' employment as an ironworker with Capitol Steel commenced August 14, 1984. Two months later, James suffered a compensable injury to the left knee during a slip and fall incident. He was awarded temporary total disability benefits. In 1986, Dr. William Fortune, James' treating physician for the knee injury, informed Capitol Steel's insurance carrier that James' knee injury left him partially disabled, and, as a result, James would not be able to return to his regular employment. Dr. Fortune recommended that James begin vocational rehabilitation pursuing light work options. In a "Work Capabilities Assessment" report that was sent to Rehabilitative Services and Vocational Placement, Inc., Dr. Fortune indicated that James was capable of only sedentary work which did not require heavy lifting.

In addition to the compensable knee injury, James also suffers from other unrelated ailments which pre-date both his industrial accident and his employment with Capitol Steel. As a result of a laryngectomy in 1976, James speaks with difficulty through a small opening in his throat. A medical report which was submitted to the commission stated that James "has to be very careful in that he free breathes and this is a common source of infection for him. He therefor [sic] cannot be around a lot of people. . . ." James also suffers from hypertension, which he has had since 1974.

Delores Margeson, a rehabilitation counselor, met with James on June 17, 1987. Her notes from this first meeting reveal that James informed her that he was receiving Social Security Disability benefits and that he was "officially retired." Margeson offered James job applications for a position at the V.A. Hospital and for the food service contractor at the National Rehabilitation Hospital. James refused to accept the applications and made it clear that he was not planning to work. He also failed to attend any subsequently scheduled meetings and eventually ceased all communication with Margeson.

Capitol Steel filed an application with the Industrial Commission requesting suspension of James' compensation benefits due to his refusal to cooperate with rehabilitation efforts as required by

Code § 65.1-88. At a hearing held before the deputy commissioner, James testified that the rehabilitation specialist had failed to consider all of his ailments in seeking suitable work for him. In response to inquiries whether he had informed Margeson of his other physical disabilities, James testified, "Nobody would listen to me. Last time she talked to me I told her I was retired." After reviewing the evidence, the deputy commissioner found that James "is poorly motivated to return to work and is apparently little-interested in securing even sedentary work suitable to his condition." Payment of compensation was suspended until James cured his refusal to cooperate. On review, the full commission affirmed the decision and also found that James' offer at the hearing to cooperate with rehabilitation efforts was not sufficient to cure his refusal.

II.

Factual findings of the Industrial Commission will be upheld on appeal if supported by credible evidence. *Ivey v. Puckett Constr. Co.*, 230 Va. 486, 488, 338 S.E.2d 640, 641 (1986). To support a finding of refusal of selective employment "the record must disclose (1) a *bona fide* job offer suitable to the employee's capacity; (2) [a job offer that was] procured for the employee by the employer; and (3) an unjustified refusal by the employee to accept the job." *Ellerson v. W.O. Grubb Steel Erection Co.*, 1 Va. App. 97, 98, 335 S.E.2d 379, 380 (1985); *see also* Code § 65.1-63; *Johnson v. City of Clifton Forge*, 7 Va. App. 538, 545, 375 S.E.2d 540, 544-45 (1989). Moreover, an employee's unjustified refusal to cooperate with placement efforts of the employer is tantamount to an unjustified refusal of selective employment under Code § 65.1-63. *Johnson*, 7 Va. App. at 547, 375 S.E.2d at 546.

James argues that he was under no obligation to cooperate with Margeson and that in view of his preexisting ailments, his refusal to do so was justified because the rehabilitation efforts were not within his residual capacity. The commission specifically held that *American Furniture Co. v. Doane*, 230 Va. 39, 334 S.E.2d 548 (1985), precluded consideration of James' other physical limitations in assessing whether his refusal to cooperate was unjustified. We do not read *Doane* to be as sweeping in its application as does the commission. In *Doane*, the claimant suffered an injury which was unrelated to employment and which occurred

after claimant was disabled and unemployed. Due to that injury, the claimant argued that the selective employment was unsuitable. The Supreme Court held that "[a]n employer . . . is absolved of liability for compensation if the employee refuses selective employment because of a physical condition unrelated to the original industrial accident *and arising since the accident.*" *Doane*, 230 Va. at 43, 334 S.E.2d at 550 (emphasis added). In this case, however, the circumstance relied upon to advance the claim that the job was unsuitable was a condition which pre-existed both the compensable injury by accident and James' employment with Capitol Steel. Neither the explicit language of *Doane* nor the beneficent purpose of the act, *see Burlington Mills Corp. v. Hagood*, 177 Va. 204, 211, 13 S.E.2d 291, 293 (1941), compels the conclusion that employment suitable to the employee's residual capacity does not require consideration of a condition which pre-existed the injury by accident and which was obvious to the employer when the employee was hired.

■■■ "[E]mployment 'suitable to [the employee's] capacity' means employment within the employee's residual capacity resulting from the industrial accident." *Doane*, 230 Va. at 42, 334 S.E.2d at 550. Obviously, a component of the determination of residual capacity is the characteristic of the employee prior to the injury by accident. "Under the Virginia Workmen's Compensation Law, the employer takes the employee as he is. . . ." *McDaniel v. Colonial Mechanical Corp.*, 3 Va. App. 408, 414, 350 S.E.2d 225, 228 (1986) (quoting *Hawkins v. Lane*, 49 O.I.C. 144, 147 (1967)). Having employed James with his obvious pre-existing condition which causes him to speak with difficulty through a small opening in his throat, the employer cannot now be heard to claim that James' condition is not to be considered in determining his current residual capacity.

Having made these observations, we conclude, however, that based on the facts of this case the issue of James' pre-existing condition is not dispositive. Although James asserts that Margeson failed to consider his pre-existing physical condition in her job search efforts, rendering her efforts "unreasonable," the evidence in the record is to the contrary. Margeson testified that she used Dr. Fortune's Work Capacities Assessment as a guideline in her job search efforts on behalf of James. She initiated job development in accordance with Dr. Fortune's recommendations and re-

strictions. James admitted at the hearing that Dr. Fortune was fully aware of all his physical limitations. He cannot now be heard to suggest that Dr. Fortune did not take into account his entire physical condition in encouraging vocational rehabilitation. Furthermore, Margeson's records suggest that she considered James' laryngectomy in her job search efforts. In one of her progress reports, Margeson observed that she located a sedentary job for James as a dispatcher but rejected it because "it is difficult to understand Mr. James when he talks."

The deputy commissioner found that James unjustifiably refused to cooperate with the employer's rehabilitation efforts. The commission also found that James told Margeson that he was unable to work and that he had retired. The record in this case contains abundant credible evidence in support of these findings. In the first scheduled meeting with Margeson which James attended, he informed Margeson that he was receiving Social Security and was "officially retired." James also refused to accept two job applications from Margeson at that time. Although Margeson scheduled five subsequent meetings with James, he failed to attend any of these meetings. In phone calls to James designed to encourage attendance at these meetings, Margeson testified that James reportedly told her "that he understood that [Margeson] had to do [her] job, but that, as he had told [her] before, he was not going to participate in the job search." Thereafter, James refused to accept Margeson's certified letters. At the hearing, James stipulated to the factual accuracy of Margeson's notes and fully acknowledged that he had failed to attend the scheduled meetings, stating only that he was "not able to work" and "was retired."

James' refusal to meet with Margeson in order to discuss his work options, experience, and limitations frustrated her job search efforts in his behalf. This evidence establishes that James' unconditional rejection of Margeson's efforts demonstrated an unwillingness on his part to cooperate with rehabilitation efforts. James' unilateral action thwarted Capitol Steel's efforts to secure employment within James' residual capacity. *See Klate Holt Co. v. Holt*, 229 Va. 544, 547, 331 S.E.2d 446, 448 (1985). Thus, the commission did not err in concluding that James refused to cooperate

with reasonable rehabilitation efforts.

## III.

■ The commission's determination that James' offer to cure his unjustified refusal was insufficient is also supported by credible evidence. Assuming that the refusal to cooperate with vocational rehabilitation could be cured by a verbal statement of willingness to cooperate, the commission could nevertheless find James' testimony at the hearing insufficient to cure the refusal. In order for a cure of a refusal to be effective it must be made in good faith. *See Thompson v. Hampton Institute*, 3 Va. App. 668, 671, 353 S.E.2d 316, 317 (1987). In response to his counsel's question whether he was presently willing to work with the rehabilitation counselor, James testified:

A. It's like I said, what they gonna find for me to do. I'm not educated. Sometimes I can't get around — what are they gonna find for me to do?

Q. Mr. James, are you willing to work with them if they can find something you can do? If they take into consideration all your disabilities?

A. If they can find that.

Q. Are you saying yes?

A. Yes.

Q. Okay.

A. If they can find that,. . . .find. . . . somebody. . . .you know. . . .my. . . .

Q. Mr. James, have you always been willing to work with them to find something that you could do if they would take into consideration all of your disabilities if they were able to find something, were you willing always to work with them?

A. I'm a realistic man. I believe in facing the facts. Whatever I've told you I've faced the fact that I'm retired. . . .

The deputy commissioner, who observed the appearance and demeanor of the claimant, was in the best position to judge from James' verbal and nonverbal responses to these questions whether his offer to cure was made in good faith. The determinations of the deputy and full commission on this issue will not be disturbed.

For the foregoing reasons, the opinion of the Industrial Commission is affirmed.

*Affirmed.*

Barrow, J., and Keenan, J., concurred.