TOM BILLY

AND

AMERICAN RELIANCE INSURANCE COMPANY

v.

MANUEL A. LOPEZ

No. 0760-93-4

Decided August 31, 1993

Counsel

(Cathie W. Howard; Williams, Butler & Pierce, on brief), for appellants.

(William S. Sands, Jr.; McChesney, Duncan & Dale, on brief), for appellee.

Opinion

**KOONTZ, J.**—Tom Billy (employer) and American Reliance Insurance Company (insurer) appeal from a decision of the Workers' Compensation Commission (commission) awarding benefits to Manuel Lopez (Lopez), claimant. Employer contends on appeal that the commission erred in finding that Lopez, an illegal alien at the time of hire, was entitled to compensation benefits when he became eligible for employment in the United States and so notified employer prior to his injury. Holding that credible evidence supports the commission's finding that Lopez "cured" his fraud when he legitimized his employment status and notified employer, we affirm the commission's decision.

Lopez entered the United States illegally in April 1989 and subsequently obtained a false social security card and a false green card. He used these cards to procure employment with Long Fence Company (Long Fence) as a laborer. At Long Fence, Lopez worked for Tom Billy (Billy), then a job supervisor. In early 1990, while employed by Long Fence, Lopez, along with a large group of employees, stayed home on a particular day when the Immigration and Naturalization Service visited Long Fence. Billy had heard rumors that Long Fence was having "immigration problems," and he assumed that Lopez was one of the workers affected.

In April 1990, Billy left Long Fence to form his own company; however, he continued to subcontract for Long Fence. On April 25, 1990, Lopez approached Billy to inquire about a job with Billy's new company. They agreed that Lopez would earn $7.50 per hour and that his employment with Billy would start on April 30, 1990. During their discussions on April 25, 1990, Billy did not require Lopez to produce proper identification to demonstrate his legal alien status.

On April 30, 1990, Lopez began working for Billy. On that date, Billy gave Lopez tax forms to complete. No other documents were ex-

changed on Lopez's first day of work. On May 2, 1990, Lopez returned the completed tax forms to Billy. Billy testified that, upon his request for proper identification, Lopez showed him what appeared to be a social security card and a green card. Lopez denied that Billy asked for any work papers on May 2, 1990 and further denied showing any such documents to Billy. Lopez admitted that he supplied a false social security number on the tax forms which he completed.

Earlier, in March 1990, Lopez had contacted a lawyer and was in the process of obtaining legal work papers. In August 1990, Lopez obtained a proper social security card and green card and gave Billy the new social security number. In January 1992, Billy filed an Employment Eligibility Verification Form (I-9 Form), stating that Lopez was eligible to work in the United States. Billy stated that he was not aware at that time that the first social security number that Lopez had given him was false. Billy testified that even if he had known that Lopez had previously misrepresented his eligibility to work, Billy still would have continued to employ Lopez after he obtained the legal documents because Lopez was a good worker.

On May 20, 1992, Lopez sustained a severe spinal cord injury when a section of fence fell on him while working for Billy at Washington National Airport. As a result of this injury, Lopez is now a paraplegic.

The deputy commissioner held that Lopez's misrepresentation of his eligibility for employment in the United States did not bar his claim for benefits because employer failed to prove that (1) the misrepresentation was made at the time of hire; (2) employer relied on the misrepresentation to its detriment; and (3) there is a causal relationship between the misrepresentation and the injury by accident. The commission affirmed the decision of the deputy commissioner. Rejecting employer's contention that a fraudulent employment could never thereafter be cured, the commission stated:

> In this case, the claimant legitimized his work status before the industrial accident and so notified his employer. If his employment were illegal prior to that date, we hold that his employment status was legal from August 15, 1990, when that situation was corrected and his employer so advised. It, therefore, follows that he enjoyed the status of a legal alien at the time of his industrial accident on May 20, 1992.

On review, the commission's findings of fact must be upheld when supported by credible evidence. *James v. Capitol Steel Constr.*

*Co.*, 8 Va. App. 512, 515, 382 S.E.2d 487, 488-89 (1989). We must construe the evidence in the light most favorable to the party prevailing below. *Crisp v. Brown's Tysons Corner Dodge Inc.,* 1 Va. App. 503, 504, 339 S.E.2d 916, 916 (1986).

Employer contends that Lopez's false representation as to his eligibility for employment in the United States at the time of hire bars his ·claim for compensation benefits. Moreover, because the evidence showed that employer would not have hired Lopez had he been unable to produce documentation indicating his legal alien status, employer claims that the misrepresentation cannot be cured even though Lopez obtained legal alien status prior to the injury. Employer further contends that there is evidence that the misrepresentation occurred at the time of hire, that it induced reliance on the part of Billy, and resulted in a causal relationship between the misrepresentation and the consequent injury.

■ Although no Virginia appellate decision addresses the specific issue raised in this case, we find that the principles applicable to cases involving a false representation on an employment application are equally applicable under the facts of this case. Under this analysis, a false representation on an employment application bars a claim for compensation benefits "upon proof by the employer that: (1) the employee knew that the representation was false; (2) the employer relied upon the false misrepresentation; (3) such reliance resulted in the consequent injury; and (4) there is a causal relationship between the injury in question and the false representation." *Grimes v. Shenandoah Valley Press,* 12 Va. App. 665, 667, 406 S.E.2d 407, 409 (1991) (citing *McDaniel v. Colonial Mechanical Corp.,* 3 Va. App. 408, 411-12, 350 S.E.2d 225, 227 (1986)). Upon application of this test to the facts of this case, we hold that employer failed to meet its burden of proof.[1]

First, Lopez does not dispute that he was an illegal alien at the time he was hired or that in supplying a false social security number on tax forms he misrepresented his eligibility for employment in the United States. Thus, Lopez concedes that he knew the representation was false.

---

[1] The issue in this case is not whether Lopez's initial status as an illegal alien bars his claim for compensation benefits; rather, the issue is whether his *misrepresentation* as to that status bars his claim. *See Manis Constr. Co. v. Arellano,* 13 Va. App. 292, 294-95, 411 S.E.2d 233, 235 (1991).

However, employer did not prove that it relied on the misrepresentation and that such reliance resulted in the injury. Although Billy had reason to question Lopez's legal status based upon his knowledge of the "immigration problems" at Long Fence in early 1990, he did not inquire about Lopez's eligibility for employment on the date he was hired, April 25, 1990, and Lopez did not provide any information or documentation regarding his status. Billy did not ask Lopez for any documentation until one week after he hired him, and he did not ask Lopez to complete an I-9 Form until January 1992. The misrepresentation did not occur until May 2, 1990, three days after Lopez began employment, when Lopez supplied a false social security number on the tax forms he completed for Billy. Thus, credible evidence in the record belies employer's assertion that it relied on the false representation in hiring Lopez.

Finally, under the last prong of the test, employer failed to prove a causal relationship between the injury and the false representation. There is simply no evidence in the record that Lopez's alien status was in any way related to the consequent injury. *See Grimes,* 12 Va. App. at 667-68, 406 S.E.2d at 409 (finding no causal connection between claimant's lumbo-sacral back injury and misrepresentation as to existence of prior "backaches" where prior back pain was caused by medical problems unrelated to the back); *cf. McDaniel,* 3 Va. App. at 413-14, 350 S.E.2d at 228-29 (finding a causal relationship between the injury involving back pain radiating into hip and leg and the misrepresentation where claimant, who had been unable to work at prior jobs because of back pain radiating into both legs, stated in job application that he had no specific problems which would prevent him from working). Moreover, Billy testified that he would have continued to employ Lopez after he provided the valid social security number even if Billy had known that Lopez had earlier misstated his legal status. Thus, Lopez would have been employed by Billy at the time of his injury notwithstanding his earlier misrepresentation.

We agree with the commission's finding that, although Lopez initially misrepresented his work eligibility status, his subsequent receipt of legal authorization to work and notice to employer prior to the injury cured the misrepresentation. When an illegal alien who misrepresents his eligibility status at the time of hire subsequently obtains legal status, there is no longer a causal connection between the false statement and the consequent injury. No sound policy reason exists for denying benefits to an individual, such as Lopez, who was legally eligible to work when injured. Indeed, such a result would discourage

employees who misrepresent their alien status at the time of hire from subsequently correcting that fraud by obtaining legal status and providing their employers with the valid documentation.

For these reasons, we find that the commission's award of benefits to Lopez is supported by credible evidence. Accordingly, we affirm the decision.

*Affirmed.*

Barrow, J., and Bray, J., concurred.