COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Elder and Senior Judge Cole
Argued at Richmond, Virginia


PHILIP MORRIS USA AND
 LUMBERMENS MUTUAL CASUALTY COMPANY
                                    MEMORANDUM OPINION[*] BY
v.  Record No. 1783-97-2         JUDGE JAMES W. BENTON, JR.
                                       FEBRUARY 3, 1998
VICKIE R. LAWSON


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Thomas J. Mitchell (Hunton & Williams, on
            brief), for appellants.

            William R. Keown (Beddow, Marley &
            Associates, on brief), for appellee.


     Philip Morris appeals the decision of the Workers'

Compensation Commission awarding temporary total disability

benefits and medical benefits to Vickie R. Lawson.  Philip Morris

argues that Lawson's injury was not an injury by accident but was

a gradually incurred, repetitive use injury.  We affirm the

commission's award.

                                I.

     The evidence proved that on July 22, 1996, Vickie Lawson was

assigned to a work shift at a Philip Morris facility that

required her to pin "hogsheads."  The work activity of "pinning

hogsheads" involves sealing large tobacco casks, called

hogsheads, by pulling clips together, inserting pins to secure a

lid, and then pounding the pins with a hammer to hold the casks

        [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

together.  This was Lawson's first time pinning hogsheads.

Lawson testified that she felt a sudden, sharp, shooting pain in her right arm when she "tried to beat a head down into the hogshead."  She had done "no more than two" hogsheads and made "no more than two or three" hits on the pins when she felt the pain.  Lawson reported the injury to her supervisor when he arrived at her work station about thirty to forty minutes after it happened.  Lawson finished her shift on July 22 and continued to work for the rest of the week.  However, she did not hammer any more hogsheads.

Robert Hartsell, Lawson's co-worker, testified that he was working on the same shift with Lawson pinning hogsheads.  About fifteen to twenty minutes into the shift, after they had pinned two hogsheads, Lawson told him that she hurt her arm.  When Lawson made the complaint, she had taken no more than two or three hits.  Hartsell testified that Lawson did not pin any more hogsheads after her injury and that he and another co-worker completed the tasks.  Lawson's production superintendent testified that he was informed of the incident the day it happened.

On July 31, Lawson sought medical attention from Dr. David Compton, Philip Morris' Director of Occupational Health Services.  Lawson testified that she had never had any problems or medical treatment to her right arm, elbow, or wrist before this incident.  She also testified that she told Dr. Compton "that I had gotten

hurt on the 22nd of July, trying to beat a lid into a hogshead, and that it was a sudden sharp pain that went through my right arm."

Dr. Compton reported the following:
Employee presents for evaluation of right forearm and elbow pain.  States that arm began hurting after several shifts in her new job on packing line #3 at P500.  The specific activity that is problematic is closing and pinning hogsheads.  She does not report an incident of injury.

Dr. Compton testified in his deposition that Lawson told him that she first noticed the onset of pain on July 22 but did not tell him she had sharp shooting pain on July 22.  He also testified as follows:

[Lawson] came up and told me that her elbow had started hurting after working on the pinning of the hogs' heads, basically describing that, as she was trying to close the hogs' heads, she started having elbow pain and she couldn't close them any longer. . . .  She told me [the pain] begun gradually over the last several days on the shift and that she had had assistance during that time because it had finally gotten to a point where she could not work any longer, and that's what prompted her to seek medical attention.

Dr. Compton diagnosed Lawson with lateral epicondylitis.  He testified that epicondylitis is "recurrent small tears" in the tendon that usually develop "over a period of time."  Dr. Compton also testified, however, that he was aware of one case where epicondylitis was caused by trauma when a person fell and struck his elbow.

Lawson went to the Chippenham Medical Center on August 2, 1996. The triage nursing notes indicated that Lawson hurt her arm at work last week, that her pain increased yesterday, with numbness and tingling from the shoulder to the hand and fingers, and that Lawson had received a prior diagnosis of epicondylitis. Dr. Brian Kelleher examined Lawson and recorded her history as follows:

> Patient complains of having increasing dull aching right forearm/elbow pain for approximately 1-2 weeks prior to arrival. She says that the discomfort has been called "epicondylitis" by the physician at Philip Morris where she works. It is attributed to the heavy labor involved in sealing large tobacco casks called "hogsheads."

Dr. Kelleher diagnosed a strain of the right elbow.

Lawson was next treated by Dr. Samuel Jessee, an orthopedic surgeon. He reported that Lawson "complain[ed] of a sharp pain in the right arm [that] . . . began to bother her on 7/22 when she was beating a hog's head lid on with a hammer." Dr. Jessee diagnosed Lawson with lateral epicondylitis and tendinitis and treated Lawson with medication, injections, physical therapy and a soft cast. He released her to return to work on October 17.

Based on this evidence, the deputy commissioner denied Lawson's claim, finding that Lawson presented no medical evidence to prove that her condition was the result of a specific incident. The commission reversed that decision, holding that Lawson's injury "was related to a single, identifiable incident" and qualifies as an "injury by accident" and that "the record as

- 4 -

a whole establishes the occurrence of a particular injury and a sudden mechanical change."

Philip Morris contends that Lawson presented no credible evidence to prove her condition arose suddenly as a result of a single identifiable incident.  Philip Morris argues that Dr. Compton and Dr. Jessee both noted a history of a gradually occurring injury and diagnosed her as suffering from a repetitive use injury.

The principle is fundamental that this Court will uphold factual findings of the commission if those findings are supported by credible evidence.  <u>See</u> Code § 65.2-706; <u>James v. Capitol Steel Constr. Co.</u>, 8 Va. App. 512, 515, 382 S.E.2d 487, 488 (1989).  "The actual determination of causation is a factual finding that will not be disturbed on appeal if there is credible evidence to support the finding."  <u>Ingersoll-Rand Co. v. Musick</u>, 7 Va. App. 684, 688, 376 S.E.2d 814, 817 (1989).  "'Medical evidence is not necessarily conclusive, but is subject to the commission's consideration and weighing.'"  <u>Dollar General Store v. Cridlin</u>, 22 Va. App. 171, 176, 468 S.E.2d 152, 154 (1996) (citation omitted).

> [E]ven though great weight should be given to the evidence of an attending physician, his opinion is not binding on the Commission. The probative weight to be accorded such evidence is for the Commission to decide; and if it is in conflict with other medical evidence, the Commission is free to adopt that view "which is most consistent with reason and justice."

<u>C.D.S. Constr. Services v. Petrock</u>, 218 Va. 1064, 1071, 243

S.E.2d 236, 240 (1978) (citation omitted).

The commission clearly considered the medical evidence and made findings concerning the reports of Dr. Compton and Dr. Jessee. Indeed, the commission stated:

> We do not find it fatal to the claim that Dr. Compton did not record a sudden incident, as medical personnel are generally more interested in assessing and treating a problem than in recording the precise details of its genesis. Dr. Compton did, however, note that the pain originated on July 22 and that a co-worker had been doing the "actual" work since then.

The commission also found that "Dr. Jessee's notes record that [Lawson's] problem began 'on 7/22 when she was beating a hog's head lid on with a hammer.'" These findings are supported by credible evidence.

Although Dr. Compton did not record a sudden event, he did note that Lawson's pain originated on July 22. He also testified that although Lawson continued to work her shift, she could no longer close the hogsheads after the injury. Lawson told him that she "had someone working with her, and she said they were actually doing it and she was putting the pins in, at that time."

Dr. Jessee's records precisely state that Lawson's problem began on July 22 and had its origin in her activity of "beating a hog's head lid on with a hammer." His August 6, 1996 report "[b]asically [describes] her job" but it contains no suggestion that her injury results from repetitive activity.

Furthermore, the testimony of an employee may also be

- 7 -

considered in determining causation.  See Dollar General, 22 Va. App. at 176, 468 S.E.2d at 154.  Philip Morris, however, argues that Lawson's testimony that she suffered a sudden injury and that she did not engage in repetitive work activities is not credible because it is inconsistent with the histories she provided the doctors.

Viewed in the light most favorable to Lawson, see R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 212, 212, 390 S.E.2d 788, 788 (1990), the medical evidence, Lawson's testimony, the testimony of Lawson's co-worker, and the testimony of the production superintendent provide credible evidence to support the commission's finding that Lawson suffered an injury by accident. Lawson testified that she had no elbow problem prior to July 22. She also had never before hammered a hogshead pin.  Fifteen to twenty minutes into her first shift pinning hogsheads, after pining no more than two hogsheads, Lawson felt a sudden, sharp pain in her elbow as she hammered a pin.  She immediately stopped hammering and did not resume hammering.  For the remainder of her work shift, she simply held the pins while her co-workers did the actual hammering.  "[T]he commission was free to credit [Lawson's] testimony at the hearing as a basis for its finding of causation.  The fact that contrary evidence may appear in the record 'is of no consequence if there is credible evidence to support the commission's finding.'"  Dollar General, 22 Va. App. at 177, 468 S.E.2d at 155 (citation omitted).

Lawson's testimony was corroborated by her co-worker. Furthermore, Lawson reported her injury to her supervisor and the superintendent on the day the incident occurred. The superintendent agreed that Lawson had never hit a hogshead before her July 22 shift. This evidence and Dr. Jessee's history of the injury support the commission's findings.

Accordingly, we hold that credible evidence in the record supports the commission's award of benefits, and we affirm the award.

<u>Affirmed</u>.