COURT OF APPEALS OF VIRGINIA


Present:  Judges Bray, Annunziata and Frank


CITY OF BUENA VISTA PUBLIC WORKS AND
 VIRGINIA MUNICIPAL GROUP
 SELF-INSURANCE ASSOCIATION
                                        MEMORANDUM OPINION*
v.    Record No. 1064-99-3                 PER CURIAM
                                        SEPTEMBER 14, 1999
MARSHALL V. SOUTHERS


             FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

             (John P. Grove; Charles V. Mehler, III;
             Woods, Rogers & Hazlegrove, P.L.C., on
             brief), for appellants.

             (H. David Natkin, on brief), for appellee.


     City of Buena Vista Public Works and its insurer

(hereinafter referred to as "employer") contend that the

Workers' Compensation Commission (commission) erred in finding

that Marshall V. Southers (claimant) did not unjustifiably

refuse selective employment.  Upon reviewing the record and the

briefs of the parties, we conclude that this appeal is without

merit.  Accordingly, we summarily affirm the commission's

decision.  See Rule 5A:27.

     On appeal, we view the evidence in the light most favorable

to the prevailing party below.  See R.G. Moore Bldg. Corp. v.

Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990).

_____

        * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

Factual findings made by the commission will be upheld on appeal if supported by credible evidence.  See James v. Capitol Steel Constr. Co., 8 Va. App. 512, 515, 382 S.E.2d 487, 488 (1989).

Claimant, a forty-eight-year-old man, worked for employer for twenty-six years before his injury and has a seventh grade education.  At the time of his injury, he was a supervisor in the public works department.  He supervised storm drainage work, which included concrete finishing.

Employer's sole offer of post-injury work to claimant was "homebound" part-time employment with Work Enterprises in April 1997.  Work Enterprises would pay claimant $6.00 per hour for twenty-one hours of work per week.  The job involved cutting six-inch wide netting with scissors into seven inch sections, counting between 100 and 250 such sections, and packaging the sections into a plastic bag.  In addition, if ribbon cutting was needed, the claimant would cut fourteen-inch strips of ribbon from a 500-yard spool.

An October 10, 1996 Functional Capacity Evaluation indicated that claimant was "understandably cautious and has quite a pattern of protection to overcome, which may not be easily changed," based on the duration of claimant's injuries and his re-injuries.  On March 24, 1997, Dr. J. Gordon Burch, claimant's treating neurologist, approved four job descriptions for the claimant with Work Enterprises.  In his September 1997 deposition, Dr. Burch explained that claimant could perform work

where he had unlimited personal discretion as to when he was sitting, standing and walking. However, Dr. Burch was concerned about any job for claimant that would entail prolonged sitting. Dr. Robert Widmeyer testified in his deposition that he did not believe claimant could successfully perform the Work Enterprises jobs, which he termed as "demeaning," but that he was not physically prevented from trying them.

Claimant testified that he believed he was unable to perform the jobs because they required sitting and working with his hands. He stated that he was unable to sit for more than forty-five minutes without having to lie down for two hours before he could sit up again. He was required to lie down most of the time.

In denying employer's application to terminate claimant's benefits, the commission found as follows:

> It is not clear what the specific qualifications for the Work Enterprises jobs are. Dr. Widmeyer, who reviewed the job descriptions, stated in his deposition that "assuming they don't require you to sit in a fixed position, obviously, there's nothing in the job itself that would bother anybody." It is also not clear what skills an employee is expected to develop in the course of employment. Mr. [Richard] Fender testified that the claimant would be "trained"; the job in which he intended to place the claimant, however, only involved cutting lightweight netting in seven-inch sections and placing them in a plastic bag. There is also no evidence of the economic impact of the jobs, if any. We may infer that the seed packages are utilized in wedding ceremonies; there is no evidence,

> however, that this is a genuine business concern.
>
> . . . We believe that the jobs offered to the claimant were justifiably refused, given his lengthy, valuable employment history, his considerable and chronic symptoms, and his need, as reported in his [Functional Capacity Evaluation], of a careful and calculated approach to returning him to gainful employment.

"'If an injured employee refuses employment secured for him suitable to his capacity, he shall only be entitled to the benefits provided for in § 65.2-603 during the continuance of such refusal, <u>unless in the opinion of the Commission such refusal was justified</u>.'"  <u>DePaul Med. Ctr. v. Brickhouse</u>, 18 Va. App. 506, 508, 445 S.E.2d 494, 495 (1994) (quoting Code § 65.2-510).  Code § 65.2-510 vests broad discretion in the commission to determine whether under the circumstances an employee is justified in refusing selective employment.  <u>See</u> <u>Brickhouse</u>, 18 Va. App. at 508, 445 S.E.2d at 495.

Assuming without deciding that employer offered employment to claimant that was within his residual capacity, we find that credible evidence supports the commission's finding that claimant was justified in refusing such employment.  The testimony of claimant, as well as the medical records and physicians' deposition testimony, amply supports the commission's finding that claimant's placement in the Work Enterprises jobs would serve no legitimate rehabilitative

- 4 -

purpose and was not appropriate vocational rehabilitation pursuant to Code § 65.2-603(A)(3).

For these reasons, we affirm the commission's decision.

<u>Affirmed.</u>