COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Coleman and Willis


REYNOLDS METALS COMPANY AND
 PACIFIC EMPLOYERS INSURANCE COMPANY

                                        MEMORANDUM OPINION*
v.    Record No. 0800-00-2                  PER CURIAM
                                         AUGUST 22, 2000
PATRICIA MARCHELE CHOWNING


             FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

                (Patricia C. Arrighi; Taylor & Walker, P.C.,
                on brief), for appellants.

                No brief for appellee.


        Reynolds Metals Company and its insurer (hereinafter

referred to as "employer") contend that the Workers'

Compensation Commission erred in finding that Patricia Marchele

Chowning's therapeutic whirlpool tub qualified as reasonable and

necessary medical treatment pursuant to Code § 65.2-603(A)(1).

Upon reviewing the record and opening brief, we conclude that

this appeal is without merit.  Accordingly, we summarily affirm

the commission's decision.  See Rule 5A:27.

        In accord with well-established principles, factual

findings made by the commission will be upheld on appeal if

supported by credible evidence.  See James v. Capitol Steel

Constr. Co., 8 Va. App. 512, 515, 382 S.E.2d 487, 488 (1989).

_____

        * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

"In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991).

On appeal, we view the evidence in the light most favorable to the prevailing party below. See R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990). So viewed, the evidence proved that Chowning sustained a compensable crush injury to her left hand and has been diagnosed as suffering from reflex sympathetic dystrophy. Chowning testified that she continues to experience "swelling, pain, tingling, burning, numbness all at the same time . . . from [her] fingertips all the way up to [her] [left] shoulder and to [her] neck and now . . . into [her] legs."

In December 1997, Dr. Keith Glowacki, Chowning's treating physician, referred her to Dr. William Smith, a pain specialist, for stellate ganglion block injections. During the course of these treatments, Chowning has received approximately forty-five stellate ganglion blocks. On April 16, 1998, Dr. Smith provided Chowning with a written prescription for a "[h]ot tub spa -- one that she will be able to soak entire [left] arm, shoulder & neck in."

Dr. Smith reported that "heat helps [Chowning's] hand and arm a great deal." Dr. Smith acknowledged that Chowning had

-

"requested that [he] support her efforts to obtain a whirlpool tub which can deliver warmth to her upper extremity" and that he "fel[t] that [the whirlpool tub] could certainly help her."  Dr. Smith noted that "the hot tub . . . will deliver warmth to her hand and arm which I think will probably help her symptoms as well."  He further noted that a therapeutic spa "warms the extremity, which can be very cold with this illness," and that "there is sound physiological evidence that [the therapeutic spa] can have the potential of helping [Chowning's] condition."

Chowning testified that in April 1998 she sent Dr. Smith's prescription for the whirlpool tub to employer's claims adjuster, Glenn Parker.  Chowning also testified that she telephoned Parker at that time and asked if she could purchase a hot tub.  Parker admitted that he knew that Chowning wanted a hot tub but testified that he first received the prescription in April 1999 when Chowning filed her claim for reimbursement.  Parker testified that he offered Chowning a health club membership in June 1998, which gave her access to a hot tub.

Chowning testified that the health club hot tub was not adequate.  She stopped using it because it was not deep enough, it contained chlorine which bothered her, it was not available to her at night when her pain was at its worst, and it was a forty-five minute drive from her home.  Chowning testified that after her home hot tub was installed in July 1998, she had used

-

it daily, and frequently late at night, to significantly relieve
pain.

Code § 65.2-603(A)(1) provides, in pertinent part, as
follows:

> [U]pon determination by the treating
> physician and the Commission that the same
> is medically necessary, the Commission may
> require that the employer furnish and
> maintain wheelchairs, bedside lifts,
> adjustable beds, and modification of the
> employee's principal home consisting of
> ramps, handrails, <u>or any appliances
> prescribed by the treating physician</u>.

(Emphasis added.)

The commission ruled that the therapeutic whirlpool tub was
medically reasonable and necessary and found as follows:

> The Deputy Commissioner found that
> [Chowning] credibly testified that her pain
> is worse at night, and that she finds
> significant pain relief by using the hot tub
> at all hours of the night.  With the home
> hot tub, she can take advantage of the
> hydrotherapy at the first sign of increasing
> pain.  The health club, on the other hand,
> closes at 10 p.m. so it is inaccessible
> during [Chowning's] late night bouts of
> pain.  Furthermore, . . . [Chowning] has to
> travel 45 minutes one way to get to the
> health club.  Additionally, the hot tub at
> the health club does not allow her to soak
> her entire neck like the home spa permits.
> Dr. Smith prescribed a hot tub in which
> [Chowning] could soak her entire arm, neck,
> and shoulders.  The home hot tub, unlike the
> health spa, permits this.  We conclude that
> the home hot tub is "the best method" of
> providing [Chowning] with pain relief.  A
> health club membership is not equivalent to
> this therapy given its limited hours of
> operation during [Chowning's] severest pain

-

> and its considerable distance from [her]
> home.
>
> . . . [Chowning] was not required to obtain
> pre-authorization from the carrier to obtain
> the health spa. . . . [I]f the evidence
> showed that her purchase was not reasonable
> or necessary or that the cost was excessive,
> she acts at her peril and bears the cost
> herself. She is not, however, required to
> seek and obtain pre-authorization before
> purchasing the equipment.

(Footnote omitted.)

Dr. Smith's records and opinions, coupled with Chowning's testimony, constitute credible evidence to support the commission's findings that Dr. Smith prescribed the home therapeutic whirlpool tub and that it constituted reasonable and necessary medical treatment of Chowning's work-related injury. As fact finder, the commission was entitled to accept as credible Chowning's testimony describing her pain and the relief from pain the hot tub provided. Those credibility determinations are within the fact finder's exclusive purview. See Goodyear Tire & Rubber Co. v. Pierce, 5 Va. App. 374, 381, 363 S.E.2d 433, 437 (1987).

Because the commission's findings are supported by credible evidence, they are binding and conclusive on appeal. See James, 8 Va. App. at 515, 382 S.E.2d at 488. Furthermore, the commission correctly found that there is no support for employer's argument that Chowning was required to obtain authorization from employer before purchasing the hot tub.

-

For these reasons, we affirm the commission's decision.

Affirmed.