COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Bray and Senior Judge Overton


DICKENSON COUNTY MEDICAL CENTER AND
 FIRE AND CASUALTY INSURANCE COMPANY
 OF CONNECTICUT
                                    MEMORANDUM OPINION*
v.    Record No. 1249-00-3              PER CURIAM
                                     SEPTEMBER 26, 2000
PATRICIA MAE ROSE


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            (Robert M. McAdam; Jones & Glenn, P.L.C., on
            brief), for appellants.

            (Paul L. Phipps; Lee & Phipps, P.C., on
            brief), for appellee.


     Dickenson County Medical Center and its insurer

(hereinafter referred to as "employer") contend that the

Workers' Compensation Commission erred in finding that Patricia

Mae Rose (claimant) proved that (1) she sustained an injury by

accident arising out of and in the course of her employment on

November 12, 1998; and (2) her post-November 12, 1998 back

problems and December 4, 1998 surgery were causally related to

the November 12, 1998 injury by accident.  Upon reviewing the

record and the briefs of the parties, we conclude that this

appeal is without merit.  Accordingly, we summarily affirm the

commission's decision.  See Rule 5A:27.

_____

     * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

On appeal, we view the evidence in the light most favorable to the prevailing party below.  See R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990).  To establish a prima facie claim for compensation for an "injury by accident" arising out of and in the course of the employment, the claimant must prove, by a preponderance of the evidence, "(1) an identifiable incident; (2) that occurs at some reasonably definite time; (3) with an obvious sudden mechanical or structural change in the body; and (4) a causal connection between the incident and the bodily change."  Chesterfield County v. Dunn, 9 Va. App. 475, 476, 389 S.E.2d 180, 181 (1990).  "Factual findings of the . . . Commission will be upheld on appeal if supported by credible evidence."  James v. Capitol Steel Constr. Co., 8 Va. App. 512, 515, 382 S.E.2d 487, 488 (1989).

It was undisputed that claimant suffered from back problems before November 12, 1998.  Her back problems began in August 1990 with a horseback riding accident.  At that time, a CT scan showed evidence of a large herniated nucleus at the L4-5 level.

In March 1997, claimant was treated for back pain after she felt a pop when rolling over in bed.  An April 5, 1997 MRI showed a minimal central disc nucleus herniation at the L4-5 level.

On September 17, 1998, claimant was treated by Dr. Matthew W. Wood, Jr., a neurosurgeon, for "pain in her lower

-

back running down her right leg, across the back of her hip."
She denied any trauma at that time. Dr. Wood reported that an
MRI scan was "completely normal."

On October 15, 1998, claimant was seen at the emergency
room for back pain from lifting a patient at work. On October
20, 1998, claimant was seen by Dr. Samir S. Missak, an
internist, for back pain radiating to the left leg secondary to
moving furniture and loading a buck stove at home. Dr. Missak
referred claimant for physical therapy. An October 22, 1998 CT
scan showed mild spinal stenosis and no focal disk herniation.
Claimant testified that she was out of work from October 20
through November 1, 1998 due to back pain.

On October 29, 1998, claimant reported to her physical
therapist that she hurt her back while feeding farm animals. On
November 11, 1998, claimant told her physical therapist that her
lower back "is really hurting following a day's work." On
November 20, 1998, claimant was discharged from physical
therapy. The discharge summary indicated that claimant's pain
and symptoms remained "about the same" throughout her therapy.

Claimant testified that on November 12, 1998, while
assisting a patient, she twisted the bottom part of her body,
causing a burning and stinging pain in her lower back. Claimant
told her supervisor that she had "pulled" her back and requested
to be seen at employer's emergency room. The emergency room
physician diagnosed low back pain and referred claimant to Dr.

-

Missak, her family physician, who told claimant that she had to be seen by a panel physician.

Claimant returned to the emergency room on November 13, 1998 and the emergency room physician referred her to Dr. Sreenivasan C. Kotay, an orthopedic surgeon. Dr. Kotay examined claimant on November 20, 1998 and diagnosed degenerative disc disease and right-sided sciatica. A November 30, 1998 MRI showed a large left posterior paracentral L4-5 extruded disc with thecal sac impression and nerve root effacement and mild L5-S1 spondylosis.

Claimant returned to the emergency room on December 1, 1998, complaining of severe back pain after sneezing. Dr. Kotay recommended immediate surgery.

On December 3, 1998, Dr. Jim C. Brasfield, a neurosurgeon, examined claimant, who reported a history of "persistent and progressive back and left leg pain that has been ongoing since at least 11/12/98." Dr. Brasfield diagnosed left L4-5 herniated nucleus pulposis, with left L5 myeloradiculopathy and foot drop. On December 4, 1998, he performed a left L4-5 partial hemilaminectomy/diskectomy.

On June 14, 1999, after reviewing claimant's medical records, Dr. Missak opined as follows:

> In summary, it is obvious that when [the claimant] returned to work on 11/02/98, she had no disc herniation (as per CT-Scan of 10/22/98) or at worst she had minimal disc herniation at L4-5 level (as per MRI of

-

April 97); and MRI can detect a small
herniation that can be missed on a CT-Scan.

The MRI of 11/30/98 that was obtained after
her work-related injury of 11/12/98 and
before the sneezing event of 12/01/98 showed
a large herniated disc at L4-5 level.

It is easy for me to conclude that her work
related injury of 11/12/98 was the most
likely direct cause of the large disc
herniation at L4-5 level (seen on the MRI of
11/30/98) or played a tremendous role in
aggravating her pre-existing back condition
i.e. caused a minimal disc herniation at
L4-5 level to become a large disc herniation
that eventually led to her back surgery.

In ruling that claimant proved that she sustained a

compensable injury by accident on November 12, 1998, which

caused her subsequent back problems and her need for surgery on

December 4, 1998, the commission found as follows:

Dr. Missak clearly opined that the
November 12, 1998, accident was a direct
cause of the disc herniation which
necessitated the surgery.  He based his
opinion on the fact that the CT scan of
October 22, 1998, did not reveal the disc
herniation, but the MRI after the accident
did.  It is also significant that a
September 1998 MRI did not reveal the disc
herniation.  In addition, the MRI after the
accident which revealed the disc herniation
was before the claimant's sneezing incident
which exacerbated her symptoms.

*     *     *     *     *     *     *

Considering Dr. Missak's clear opinion
and the fact that neither Dr. Kotay nor Dr.
Brasfield stated that the accident did not
contribute to cause the surgery, we find
that the claimant did sustain an injury in
the November 12, 1998, accident which
contributed to cause the surgery on December

-

4, 1998.  The Deputy Commissioner's finding
that her accident did not cause a sudden
mechanical or structural change in her
anatomy is reversed.

The commission, as fact finder, was entitled to accept Dr. Missak's opinion.  His opinion, coupled with claimant's medical records and testimony, constitutes credible evidence to support the commission's findings that claimant proved that her November 12, 1998 work-related accident caused a sudden mechanical or structural change in her body and that her subsequent back problems and surgery were causally related to the November 12, 1998 injury by accident.

For these reasons, we affirm the commission's decision.

<u>Affirmed.</u>

-