COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Bray and Senior Judge Overton


HYTERS COAL CO., INC. AND
 OLD REPUBLIC INSURANCE COMPANY
                                     MEMORANDUM OPINION*
v.    Record No. 0763-02-3              PER CURIAM
                                       AUGUST 27, 2002
ORAL R. BRAGG


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

                (S. T. Mullins; Street Law Firm, L.L.P., on
                brief), for appellants.

                (Clarence E. Phillips; Clarence E. Phillips,
                P.C., on brief), for appellee.


        Hyters Coal Co., Inc. and its insurer (hereinafter referred

to as "employer") contend the Workers' Compensation Commission

erred in finding that (1) Oral R. Bragg's (claimant) claim for

permanent total disability ("PTD") benefits related to his right

foot condition was not barred by the two-year statute of

limitations contained in Code § 65.2-601; (2) claimant's right

foot condition was causally related to his compensable February

6, 1991 left foot injury; and (3) claimant proved he was unable

to use his legs to any substantial degree in gainful employment,

entitling him to an award of PTD benefits.  Upon reviewing the

record and the parties' briefs, we conclude that this appeal is

_____

        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

without merit.  Accordingly, we summarily affirm the commission's decision.  Rule 5A:27.

### I.  Statute of Limitations

On appeal, we view the evidence in the light most favorable to the prevailing party below.  R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990). Factual findings made by the commission will be upheld on appeal if supported by credible evidence.  See James v. Capitol Steel Constr. Co., 8 Va. App. 512, 515, 382 S.E.2d 487, 488 (1989).

In ruling that claimant's claim for PTD benefits related to his right foot was not barred by the two-year statute of limitations contained in Code § 65.2-601, the commission found as follows:

> We do not agree with the deputy commissioner that Dr. [Calvin] Johnson's March 28, 2001 report established that the claimant injured his right foot in February 1991.  The better history taken by Johnson was in November 2000, when he examined the claimant.  In those notes, Dr. Johnson did not record a right-foot injury.  Moreover, [Dr. Johnson] appeared to be troubled with opining that the 1991 accident injured [claimant's] right foot because there was no mention of right foot problems at the time of the accident.  When [Dr. Johnson] reexamined his own notes and completed the March 28, 2001, report, he erroneously concluded that the claimant injured his right foot in the accident.
>
> The claimant has never claimed that he injured his right foot in the 1991 accident. Rather, his Claim was that, as a result of the left-leg injury, he has developed right-foot problems.  The medical evidence

- 2 -

is replete with physicians' histories of the 1991 accident, and no history, including Dr. Johnson's November 2000 history, records a right foot injury. Only in Dr. Johnson's interpretation of his history does he report a right-foot injury in 1991. We believe this was mistaken, and find that the evidence cannot reasonably be interpreted to show a right-foot injury in 1991.

The deputy commissioner denied the claim because the claimant failed to file a claim for his right foot injury within two years of February 6, 1991. The employer did not argue that "a compensable consequence would be barred by the statute [of limitations]," but argued that the claimant had a "new injury" to his right ankle that was barred by the statute of limitations. As set forth above, we do not believe that the claimant injured his right foot in the February 1991 accident. Moreover, there was no evidence of any other "new and separate injury" to the claimant's right foot. Thus, we believe that the claimant's Claim was based on his right-foot problems being a compensable consequence of the left-leg injury, and not based on "new and separate injury." Accordingly, the Claim was not barred by Code § 65.2-601 but timely under Code § 65.2-708.

(Citation omitted.)

In light of the lack of any history of claimant injuring his right foot in the 1991 accident, the commission, as fact finder, was entitled to weigh Dr. Johnson's medical reports, and to conclude that in his March 28, 2001 report, he erroneously concluded that the claimant injured his right foot in the accident. Claimant's testimony and the numerous physicians' histories of the 1991 accident that did not include a right foot injury, provided credible evidence from which the commission

- 3 -

could reasonably infer that claimant did not sustain a right foot injury in the 1991 accident, but rather that his claim was based on his right foot problems being a compensable consequence of the left leg injury. Accordingly, the commission did not err in concluding that the claim was not barred by Code § 65.2-601, but rather was timely under Code § 65.2-708.

## II. Causation

"The actual determination of causation is a factual finding that will not be disturbed on appeal if there is credible evidence to support the finding." Ingersoll-Rand Co. v. Musick, 7 Va. App. 684, 688, 376 S.E.2d 814, 817 (1989).

In ruling that claimant proved that his right foot problem was a direct and natural result of his 1991 left leg injury, the commission found as follows:

> [T]he claimant suffered from a pre-existing right-ankle condition. Dr. [William] McIlwain described this condition as a "tarsal coalition." There was no evidence, however, of any treatment or problems with the right ankle before the 1991 accident. After the accident, which resulted in the eventual loss of the claimant's left leg, the claimant developed right-leg problems. He was told in 1992 by Dr. [Judson] McGowan that he had arthritis. In 1997, Dr. [N.C.] Ratliffe told him that he had "weakness" in the right ankle.
>
> Dr. Ratliffe opined on October 27, 2000, that the claimant's right-ankle condition was "caused by his using the right ankle more, to compensate for the loss of his left leg." Similarly, Dr. McIlwain stated that the claimant's right-ankle problem "is aggravated by his having to

- 4 -

shift to the right foot because of pain on the left. Dr. Johnson's opinion as to causation is not very helpful because he was under the mistaken belief that the claimant injured his right ankle in the February 1991 accident.

. . . The claimant testified about his difficulty using his prosthesis and gait restrictions caused by his left leg. On several occasions, the claimant's treating physicians noted gait problems arising from the loss of the left leg. Most importantly, however, the medical evidence, consisting of Dr. Ratliffe's and Dr. McIlwain's opinions, was uncontradicted that the claimant's right ankle problems were the result of the left-leg amputation. Although Dr. McIlwain believed that the claimant was essentially predisposed to right-ankle problems because of his tarsal coalition, he also stated that the left-leg amputation "aggravated" his right ankle condition.

Claimant's testimony, coupled with the opinions of Drs. Ratliffe and McIlwain, provide ample credible evidence to support the commission's findings. As fact finder, the commission was entitled to weigh the medical evidence, to accept the opinions of Drs. Ratliffe and McIlwain, and to reject Dr. Johnson's opinion. "Questions raised by conflicting medical opinions must be decided by the commission." Penley v. Island Creek Coal Co., 8 Va. App. 310, 318, 381 S.E.2d 231, 236 (1989).

Because credible evidence supports the commission's finding that claimant proved a direct causal connection between the 1991 accident and his right ankle problems, we will not disturb that finding on appeal.

### III.   PTD Benefits

As the Supreme Court reiterated in Georgia-Pacific Corp. v. Dancy, 255 Va. 248, 497 S.E.2d 133 (1998), "'[t]he phrases "total and permanent loss" or "loss of use" of a leg do not mean that the leg is immovable or that it cannot be used in walking around the house, or even around the block.  They do mean that the injured employee is unable to use it in any substantial degree in any gainful employment.'"

Gunst Corp. v. Childress, 29 Va. App. 701, 708-09, 514 S.E.2d 383, 387 (1999) (citations omitted).

In awarding claimant PTD benefits pursuant to Code § 65.2-503(C)(1), and in ruling that he proved he was unable to use his legs to any substantial degree in gainful employment, the commission found as follows:

Dr. Ratliffe opined that the claimant would "never be able to return to work for his left stump."  Dr. Johnson believed that the claimant was unable to "do activities where he is required to stand, walk, or climb for prolonged period of time, nor can he use the extremities to manipulate levers or foot pedals."  He also stated that he could not work on uneven ground or "do stair climbing or ladder climbing."  Dr. McIlwain opined that "were it not for that pre-existing tarsal condition and arthritis, he could use the right lower extremity to a substantial degree in gainful employment despite the amputation on the opposite side."  Thus, Dr. McIlwain's opinion essentially was that the claimant was unable to engage to a substantial degree in gainful employment.

The claimant testified that he had an eighth-grade education, having dropped out of school after two weeks in the ninth grade because of the death of both of his parents

at that time. He has not worked since the accident and has not received any additional schooling or training. He worked as an equipment operator at the time of the accident. As early as January 1992, Dr. [Lowell] Gill, the first specialist to recommend amputation, advised the claimant to "retire from his present form of work to try to be re-educated through vocational rehab or some other agency for consideration of a more sedentary type of employment." The claimant, however, has not had any additional schooling or retraining and faces a vocational future with limited education, complete loss of one leg and a 25% loss of use of the other, and severe restrictions on his physical activities.

. . . Admittedly, there was evidence that the claimant had some residual use of his legs. On balance, however, we find that the evidence established that, more likely than not, the combination of the claimant's right and left leg injuries, together with his inability to work, have rendered him permanently and totally disabled.

The commission's factual findings are amply supported by credible evidence, including claimant's testimony and the medical records and opinions of Drs. Ratliffe, McIlwain, and Gill. That credible evidence supported the commission's conclusion that "the combination of the claimant's right and left leg injuries, together with his inability to work, have rendered him permanently and totally disabled."

"We do not retry the facts before the Commission nor do we review the weight, preponderance of the evidence, or the credibility of the witnesses. If there is evidence or reasonable inference that can be drawn from the evidence to support the Commission's findings, they will not be disturbed by this Court on appeal, even

- 7 -

though there is evidence in the record to
support contrary findings of fact."

Id. at 709, 514 S.E.2d at 387 (citation omitted).

For these reasons, we affirm the commission's decision.

Affirmed.