COURT OF APPEALS OF VIRGINIA


Present:  Judges Kelsey, Petty and Senior Judge Bumgardner
Argued at Richmond, Virginia


INFINEON TECHNOLOGIES
 NORTH AMERICA COMPANY AND
 TRAVELERS INDEMNITY COMPANY
 OF AMERICA

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0313-07-2                 JUDGE RUDOLPH BUMGARDNER, III
                                                         JANUARY 15, 2008
DANA H. CHASE


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Anne C. Byrne (Warren H. Britt; Warren H. Britt, P.C., on brief), for
            appellants.

            No brief or argument for appellee.


        Infineon Technologies North America Company and its insurer appeal an award of

benefits to Dana H. Chase.  Finding the evidence supports the commission's decision that the

claimant had a compensable occupational disease, we affirm.

        The claimant began working for the employer in February 2003.  On March 3, 2003, she

was exposed to chemicals at work and developed allergy symptoms, including burning eyes and

headaches.  She received treatment at the hospital in April 2003 and twice in May 2003.

Initially, her symptoms improved when she was not in the workplace, but increased upon her

return to work.  The claimant stopped working for the employer in May 2003.  The parties

stipulated that the claimant suffered from an occupational disease caused by chemical exposure

in May 2003 while working for the employer.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

The employer contends that it is no longer obligated to pay compensation benefits because "once an employee is no longer working in the injurious exposure environment and has completely recovered from a disabling condition due to exposure to that environment, . . . the employer no longer has any obligation to pay compensation benefits." Snellings v. Commonwealth of Virginia, V.W.C. File No. 138-66-86 (December 21, 1989). The employer argues the medical records and the claimant's own testimony establish that her symptoms resolve when she is not exposed to the chemicals in her workplace.

The commission did not make the factual findings upon which the employer's argument rests: "We do not believe that the claimant's condition was resolved . . . ." It found that the claimant presently required periodic treatment for her condition and that she suffered from daily symptoms for which she used an inhaler. The commission noted that she was unable to return to her pre-injury work as well as to other work environments because of her condition and because of multiple chemical sensitivities following workplace exposure.[1]

On appeal, we view the evidence in the light most favorable to the prevailing party below. R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990). Factual findings made by the commission will be upheld on appeal if supported by credible evidence. See James v. Capitol Steel Constr. Co., 8 Va. App. 512, 515, 382 S.E.2d 487, 488

___

[1] The commission concluded as follows:

> [T]his evidence showed that the claimant continued to suffer from disabling symptoms from her occupational asthma, requiring medical treatment, and was not able to return to her pre-injury work, as well as to other offending work environments. We do not believe that the claimant's condition was resolved, and that she simply should avoid the employer's workplace, but that the evidence showed that the claimant had developed a peculiar sensitivity to a particular type of working environment as a result of the workplace exposure, and thus that her ability to return to unrestricted, pre-injury work was diminished thereby.

(1989). Credible evidence supports the commission's finding that the claimant was partially disabled as a result of her exposure to chemicals in her pre-injury work.

The claimant stated she had not returned to the emergency room, but she never stated she did not require further medical treatment. She admitted that she could work, but she could only do so "in an environment that [she is] not going to be subjected to heavy fumes and . . . chemicals."

Dr. Sarah Shahab examined the claimant on June 30, 2003 and diagnosed her as suffering from "[r]eactive airway disease secondary to probable occupational exposure." Dr. Shahab opined that given the claimant's history, she should be permitted to change her work location, but that she could continue to work in the same industry as long as good ventilation is provided and the exposure is not present.

Dr. Kevin Cooper, a pulmonologist, performed an independent medical examination on August 20, 2004. Dr. Cooper noted that since leaving the employer, the claimant is "more sensitive to all types of airborne odors and irritants and has had to limit her travel away from home to places where the air quality is likely to be good." He noted that the claimant suffers from a "daily cough, and wheezes several times a week," and that she successfully treats these symptoms with an albuterol inhaler. Dr. Cooper also noted that the claimant suffers from chest tightness and shortness of breath, along with the wheezing, which is usually provoked by some exposure to an airborne irritant.

Dr. Cooper opined with reasonable medical probability that the claimant had "developed occupational asthma as a result of the chemical exposures at Infineon Technologies between February and May 2003." He indicated that "[o]ccupational asthma is known to occur in workers exposed to the microchip manufacturing environment." He reported that the claimant "also has multiple chemical sensitivities following this exposure." He opined, "She is not able to

work in an environment which would expose her to chemical odors, or other odors that are intolerable." He recommended "regular treatment with an inhaled steroid" and for the claimant to avoid workplaces with air irritants. He concluded:

> Although removal from the exposure to causative chemicals is necessary, it may not be sufficient to resolve the asthma. In other words, exposure to chemical irritants will make her worse, but avoidance of exposure may still leave her with asthma symptoms and the need for long term or lifelong medication. Long term medical care provided by a physician experienced in treating asthma will most likely be needed.

The commission found the evidence showed the claimant had not obtained her pre-injury status. The claimant had not recovered from her disabling condition caused by exposure; she was not cured. She did not come within the factual predicate of the commission's holding in Snellings. The evidence supported a finding that the claimant was currently partially disabled in that she continued to suffer from symptoms related to the allergic chemical reaction and was unable to perform her pre-injury work. Accordingly, we affirm the commission's decision.

Affirmed.